DA 09-0017

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 348

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

MELVIN LEE GATLIN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 08-247
Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender; Kelli S. Sather, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; Tammy K. Plubell,
Assistant Attorney General, Helena, Montana

          Fred Van Valkenburg, Missoula County Attorney; Jason Troy Marks,
Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  September 3, 2009

Decided:  October 21, 2009

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Melvin Lee Gatlin was convicted of two counts of robbery in the Fourth Judicial Court, Missoula County. He appeals the denial of his motion to dismiss the charges.

¶2 We restate the issues as follows:

¶3 Issue 1: Did the District Court err in denying Gatlin's motion to dismiss the Missoula County robbery charges because the Justice Court failed to inform him of his right to counsel at his initial appearance?

¶4 Issue 2: Should the Missoula County robbery charges be dismissed with prejudice?

## BACKGROUND

¶5 On December 4, 2007, employees at the Wye West and Jumbo Jackpot casinos in Missoula were robbed by a man claiming to have a gun. The employees gave law enforcement a description of the man and his car.

¶6 About two hours later, a Thriftway store in Butte was robbed by a man who fit the description of the Missoula robber and drove the same type of car. After a chase, Butte-Silver Bow County sheriff's deputies caught Melvin Gatlin in Jefferson County. He was arrested and incarcerated in the Butte-Silver Bow County jail for the Butte robbery.

¶7 The Butte-Silver Bow authorities sent a photograph of Gatlin to Missoula. The victims of the Missoula robberies identified Gatlin as the man who held them up. On December 10, 2007, the Missoula County Attorney filed a complaint in the Missoula County Justice Court charging Gatlin with the two casino robberies. The Missoula

2

County justice of the peace issued an arrest warrant, which was served on Gatlin in the Butte-Silver Bow County jail. The day after he was served with the Missoula County warrant, Gatlin was brought before a Butte-Silver Bow County justice of the peace, who informed Gatlin of the Missoula County charges against him and the bail amount set in the Missoula County warrant. Gatlin was told that he could be held in the Butte-Silver Bow County jail on the Missoula robbery charges until he posted bail. The justice of the peace also told Gatlin that if he posted bail on the Butte charge, he would be transported to Missoula to appear in its justice court.

¶8 Nothing in the record shows the Butte-Silver Bow Justice Court told Gatlin he was entitled to counsel on the Missoula County charges, or that if he could not afford counsel one would be appointed to defend him at the expense of the State of Montana.

¶9 Gatlin remained in the Butte-Silver Bow County jail while the prosecution of the Butte charge proceeded. He also remained in that jail pursuant to the Missoula County warrant. In February 2008, Gatlin wrote a letter to the Office of the Public Defender in Missoula, requesting counsel. The next day, a public defender notified Gatlin by letter he would assist him and filed a notice of appearance in the Missoula County case at issue here.

¶10 Eventually, Gatlin pled *nolo contendere* to the Butte robbery and was sentenced to five years at Montana State Prison. The district judge in Butte ordered that this sentence would be served concurrent with any sentence that might be later imposed for the Missoula County robberies. Law enforcement then took Gatlin to Missoula on May 8,

2008, where he made an appearance in the Missoula County Justice Court the next day.

¶11 The Missoula County Justice Court informed Gatlin of the Missoula County charges against him, the possible penalties for the offense, and informed him of his other rights pursuant to § 46-7-102, MCA. About two weeks later, the State filed the Information in Missoula County, charging Gatlin with two counts of robbery. At his arraignment, Gatlin pled not guilty.

¶12 Gatlin filed a motion to dismiss the Information because there was no preliminary examination and the Information was not filed within a reasonable time, as is required by § 46-10-105, MCA. Gatlin also moved to dismiss the Information because he was not informed of his right to counsel at his initial appearance in the Butte-Silver Bow Justice Court in December 2007, as is required by § 46-7-102, MCA.

¶13 The State argued that Gatlin's appearance before the Butte-Silver Bow Justice Court in December 2007 was not an initial appearance on the Missoula robbery charges. It argued that Gatlin's initial appearance was actually on May 9, 2008, in Missoula, and the Justice Court at that time informed him of his rights pursuant to § 46-7-102, MCA. The District Court denied Gatlin's motion to dismiss.

¶14 Gatlin pled guilty to the Missoula robberies pursuant to a plea agreement in which he reserved the right to appeal the denial of his motion to dismiss. In the plea agreement, the prosecution agreed to recommend a ten year sentence on each count to run concurrent with each other and with the Butte-Silver Bow County sentence. At the sentencing hearing, the District Court first sentenced Gatlin to twenty years at Montana State Prison,

4

with ten years suspended on each count. The court ordered them to run concurrently with each other but consecutively to the five year sentence imposed in Butte-Silver Bow County. Gatlin then informed the District Court that the Butte-Silver Bow County sentence had been ordered to run concurrently with whatever sentence was imposed on him in Missoula. Upon learning this, the District Court increased Gatlin's sentence to twenty-five years with ten years suspended and ordered it to run concurrently with the Butte-Silver Bow County sentence.

## STANDARDS OF REVIEW

¶15 The grant or denial of a motion to dismiss in a criminal case is a question of law, which we review de novo. *State v. Robison*, 2003 MT 198, ¶ 6, 317 Mont. 19, 75 P.3d 301. The determination of what constitutes a reasonable time pursuant to § 46-10-105, MCA, is within the discretion of the district court. The standard of review of discretionary trial court rulings in criminal cases is whether the trial court abused its discretion and the reasonableness of a delay is a discretionary decision which is factually driven. *Robison*, ¶ 6 (citing *State v. McElderry*, 284 Mont. 365, 370, 944 P.2d 230, 233).

¶16 Whether an initial appearance is sufficient to satisfy the requirements of § 46-7-101(1), MCA, which requires a person who is arrested to be taken without unnecessary delay before the nearest and most accessible judge, is a question of statutory construction, which we review for correctness. *City of Billings v. Peterson*, 2004 MT 232, ¶ 13, 322 Mont. 444, 97 P.3d 532.

## DISCUSSION

5

¶17 *Issue 1: Did the District Court err in denying Gatlin's motion to dismiss the Missoula County robbery charges because the Justice Court failed to inform him of his right to counsel at his initial appearance?*

¶18 Gatlin asserts on appeal that his initial appearance for the Missoula charges in the Butte-Silver Bow Justice Court in December 2007 did not satisfy the requirements of § 46-7-102, MCA, because he was not informed of his right to counsel, of his right to be appointed counsel if he could not afford a lawyer, or of his right to a judicial determination of whether probable cause existed. The State responds that Gatlin's appearance in Butte was for the Butte-Silver Bow County charges, not the Missoula charges, and the delay between Gatlin's arrest on the Missoula charges in December 2007 and his initial appearance in Missoula in May 2008 was reasonable because he remained in jail awaiting the resolution of the Butte-Silver Bow County charge.

¶19 When a person is arrested, he must be taken without unnecessary delay before the nearest and most accessible judge for an initial appearance. Section 46-7-101(1), MCA. At the initial appearance, the court must inform the defendant of, *inter alia*, the charges against him, his right to counsel, his right to have counsel assigned by a court of record, and his right to a judicial determination of whether probable cause exists if a felony charge is made by a complaint in Justice Court. Section 46-7-102(a)-(c), (g), MCA.

¶20 Section 46-8-101(1), MCA, requires that, at an initial appearance, every defendant must be informed of the right to have counsel and must be asked if the aid of counsel is desired. If the defendant desires counsel and is financially unable to retain private

6

counsel, a lawyer must be appointed to defend him at the expense of the State of Montana. Section 46-8-101(2), MCA.

¶21 The record clearly shows that Gatlin made an initial appearance on the Missoula County charges in the Butte-Silver Bow Justice Court in December 2007, a week after he was arrested. Thus, an initial appearance was held without unnecessary delay. However, at this initial appearance, the requirements of §§ 46-7-102(1)(b), (c) and 46-8-101, MCA, were not met as nothing in the record shows Gatlin was either informed of his right to counsel or his right to counsel at State expense if he could not afford to retain private counsel.

¶22 An important purpose behind requiring an initial appearance is to protect the defendant from being jailed for an indefinite period of time and to prevent him from being held incommunicado for a protracted time. *State v. Dieziger*, 200 Mont. 267, 270, 650 P.2d 800, 802 (1982). Unnecessarily delaying an initial appearance before a judge, where the duty of the court is to advise the defendant of his right to counsel "shocks the concept of fundamental fairness and due process." *Fitzpatrick v. Crist*, 165 Mont. 382, 387, 528 P.2d 1322, 1325 (1974).

¶23 The purpose behind § 46-7-102, MCA, is to ensure the defendant is duly informed of his constitutional rights as soon as possible. *Commission Comments*, § 46-7-102, MCA. Neglecting to inform an incarcerated defendant of his right to counsel as required by §§ 46-7-102(1)(b) and 46-8-101, MCA, taints the fundamental fairness of all subsequent proceedings. We conclude that in this case, where Gatlin was not informed of

7

his right to counsel in violation of § 46-7-102(b), MCA, the appropriate remedy is to vacate his conviction and order the Missoula County Information dismissed.

¶24 *Issue 2: Should the Missoula County robbery charges be dismissed with prejudice?*

¶25 The United States Supreme Court provides that the right to counsel exists to protect the accused during confrontations with the prosecutor. *U. S. v. Gouveia*, 467 U.S. 180, 190, 104 S. Ct. 2292, 2298 (1984). The right to counsel "embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel." *Gouveia*, 467 U.S. at 189, 104 S. Ct. at 2298. Said differently, the Sixth Amendment counsel guarantee is to "protec[t] the unaided layman at critical confrontations" with his "expert adversary. . . ." *Gouveia,* 467 U.S. at 189, 104 S. Ct. at 2298. United States Supreme Court decisions guide our application of other Sixth Amendment right to counsel issues, and they are instructive in this case. *See Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861 (citing *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052 (1984)).[1]

¶26 *Black's Law Dictionary* defines prejudice as, "A condition that, if shown by a party, will usu[ally] defeat the opposing party's action; esp[ecially] a condition that, if

---

[1] We rely on the Supreme Court cases only to the extent that they guide our analysis on whether Gatlin was prejudiced and do not imply that by violating § 46-7-102(b), MCA, the Justice Court totally deprived Gatlin of his right to counsel, thus violating his Sixth Amendment right to counsel.

shown by the defendant, will defeat a plaintiff's motion to dismiss a case without prejudice." *Black's Law Dictionary* 1218 (Bryan A. Garner ed., 8th ed. West 2004). Thus, should the record show Gatlin was not prejudiced by the inadequacy of his initial appearance or by an unreasonable delay, we should decline to dismiss the charges with prejudice.

¶27 The record shows that, in this instance, Gatlin's defense was not prejudiced by the lack of counsel on the Missoula County robbery charges during the time between December 10, 2007, when Gatlin was served with the Missoula County arrest warrant, and February 29, 2008, when counsel appeared on his behalf. This is a matter of 81 days during which he remained incarcerated on the Butte-Silver Bow Charge, as well as the charges in this case. *See* § 46-20-701, MCA. The Missoula County Attorney took no steps to advance the case against Gatlin while he was without counsel. No critical confrontations occurred with the prosecution between Gatlin's initial appearance and the time counsel appeared on his behalf. No new evidence against him was gathered during this time. The record shows that even if Gatlin had retained an attorney immediately after his initial appearance, he or she could have not provided any additional protection from the prosecution of the Missoula robbery charges. Finally, nowhere in the record does it show the State profited from the Butte-Silver Bow Justice Court's mistake in not informing him he had the right to counsel.

¶28 Likewise, under the specific facts of this case, the record affirmatively shows that Gatlin suffered no prejudice because of the 163 day delay between his initial appearance

in the Butte-Silver Bow Justice Court and the time the Information was filed. During the entire time he remained incarcerated in the Butte jail on the Butte-Silver Bow charges, bail had been set on the Missoula County charges and, as noted above, the delay did not adversely affect his defense to the Missoula County charges.

¶29  We conclude that Gatlin's defense was not prejudiced by the court's failure to inform him of his right to counsel or the delay in filing the Information. The dismissal of the Information shall be without prejudice.

¶30  Worth noting is that the Butte-Silver Bow County District Court had no authority to order that the sentence it imposed would be served concurrently with a sentence that had not yet been imposed. Nevertheless, as the judgment in this case shall be vacated, we need not further address this error.

## CONCLUSION

¶31  The judgment and sentence entered is reversed and this case is remanded to the District Court with instructions to dismiss the Information without prejudice.

/S/ JOHN WARNER

We Concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE

Justice James C. Nelson concurs and dissents.

¶32    I concur with the Court's analysis and it's holding that the charges against Gatlin must be dismissed. Opinion, ¶ 23. I dissent from the Court's determination, however, that the charges not be dismissed with prejudice.

¶33    The Court holds in Issue 2 that Gatlin suffered no prejudice as a result of his inadequate initial appearance and the unreasonable delay in filing the Information. Opinion, ¶¶ 27-29. As a result, the Court holds that the Information should be dismissed without prejudice, thus giving the State the opportunity to re-file the charges and to take a second bite of the apple. Opinion, ¶ 31. I cannot agree.

¶34    In *State v. Robison*, 2003 MT 198, ¶¶ 4, 16, 317 Mont. 19, 75 P.3d 301, we affirmed the district court's dismissal of the charges because there was an 11-day[1] delay between the initial appearance and the filing of the Information. We held that Robison's 11-day delay was prejudicial. *Robison*, ¶ 15. Here, the delay between the initial appearance in Butte-Silver Bow County and the filing of the information in Missoula County was 163 days, during which time Gatlin was incarcerated. Yet, without a District Court record, we conclude *sua sponte* that Gatlin suffered no prejudice.

¶35    We explained in *Robison* that prejudice was built into the reasonableness determination. We stated that a major consideration in determining prejudice was the length of delay, along with the reasons for the delay, whether the defendant had been

---

[1]  In *Robison*, ¶ 4, we refer to the delay as 11 days; in *Robison*, ¶ 15, we refer to the delay as 13 days. Robison's initial appearance was on December 3, 2001, and the Information was filed on December 14, 2001. Accordingly, the Information was filed on the eleventh day after the initial appearance. For our purposes here, the difference between an 11-day delay and a 13-day delay is a distinction without a difference.

incarcerated, whether the defendant had counsel, and whether the charges were serious or complex. *Robison*, ¶ 12.

¶36     Robison was charged with felony burglary. The Information was not filed until 11 days after his initial appearance, during which time Robison was incarcerated in jail. Without more, the District Court dismissed the Information. *Robison,* ¶ 4. We observed that the State did not discuss the circumstances of the case or offer reasons for the delay in filing the Information, but rather, argued that the "ten day" rule was arbitrary. *Robison*, ¶ 8. We agreed that the burden of showing a reasonable reason for the delay was on the State. *Robison*, ¶ 9 (citing *State v. McElderry,* 284 Mont. 365, 944 P.2d 230 (1997)). Based on the State's failure to provide a reasonable reason for the 11-day delay, the trial court dismissed the Information, and we affirmed. *Robison*, ¶¶ 9, 16. Moreover, and unlike the case at bar, Robison had received a proper initial appearance, he had been advised of his rights, counsel had been appointed, and bail had been set—albeit he remained incarcerated because he could not make bail. *Robison*, ¶ 13.

¶37     Here, Gatlin was charged with robbery, Opinion ¶ 7; he received an indisputably inadequate initial appearance and was not properly advised of his rights, Opinion, ¶ 23; bail was set, Opinion ¶ 7; he had no counsel for a week, Opinion ¶ 9; and he then remained incarcerated in Butte-Silver Bow County until he was taken to Missoula County, Opinion ¶ 10. The record shows that the State did not get around to filing the Information on the robbery charges until 163 days after the initial appearance.

¶38    In the case *sub judice*, the District Court could not have determined that the 163-day delay was reasonable or unreasonable, because the judge did not use the Butte-Silver Bow initial appearance as the operative initial appearance. Rather, the court—at the urging of the prosecutor—erroneously used a second initial appearance, once Gatlin had been transported to Missoula, as the operative initial appearance. As a result, the trial court concluded that only 13 days elapsed between that initial appearance and the filing of the Information. Importantly, and unlike *Robison*, the District Court here considered none of the factors discussed in ¶ 35 above, and it made no determination that the actual 163-day delay was or was not reasonable, or that, as a result of *that* delay, Gatlin was or was not prejudiced. Indeed, the record reflects that the trial judge determined that the delay in this case—which he determined was 13 days—was not "a legitimate concern" and a "non-issue."

¶39    Because the District Court erred in determining the date of the initial appearance, there is, consequently, absolutely nothing in the record here that demonstrates that the court exercised its discretion to determine that the delay between the initial appearance and the filing of the Information was reasonable or unreasonable or that this delay prejudiced or did not prejudice Gatlin. The District Court made none of the inquiries or decisions that we reviewed in *Robison*.

¶40    Indeed, the real reason for the delay between the initial appearance and the filing of the Information in this case was that Gatlin simply fell through the cracks through prosecutorial neglect after he was arrested. The charges were not any more complex here

13

than in *Robison*. Moreover, unlike Robison, Gatlin was given an indisputably inadequate initial appearance; he was not appointed counsel with respect to the Missoula County charges (albeit his public defender on the Butte-Silver Bow County charges volunteered to help him a week or so after Gatlin's initial appearance[2]). Gatlin remained incarcerated until he was transferred to Missoula, and the Information was filed 163 days after his initial appearance. The State offered absolutely no justification for this delay in the District Court. Rather it continued to mislead the District Court as to which initial appearance was the operative one.

¶41 The delay that Gatlin suffered was nearly 15 times longer than that in *Robison*. This case is on all fours with *Robison*, yet the majority charges ahead, in the absence of a supporting District Court record, and concludes that Gatlin suffered no prejudice because of the 163-day delay. Here, it is undisputed that the delay was unreasonable. Opinion, ¶ 23. There has been no showing that the State has met its burden to put forth a rational reason for the 163-day delay. *Robison,* ¶¶ 8-9. The State did not and has not met its burden to show that a delay of 163 days did not prejudice Gatlin. Indeed, the State, on appeal, perpetuates the error that the second initial appearance in Missoula County was the operative one.

¶42 On the inadequate record here, it is wholly improper that this Court—acting as the fact-finder, usurping the job of the District Court, and making the State's case for it—determined that the 163-day delay in this case did not prejudice Gatlin.

---

[2] There was an argument in the District Court over whether that was even proper.

¶43    My concept of "fundamental fairness and due process," Opinion, ¶ 22, is decidedly more easily offended than is the majority's here. I would not make the reasonableness and prejudice determinations that should have been made, in the first instance, by the District Court taking into consideration the factors we discussed in *Robison.* Furthermore, if this Court is intent on doing the District Court's job for it, I would not reward the State for its incompetent prosecution of Gatlin's case. I would not give it a second bite of the apple. At the very least, this case should be remanded to the District Court for a reasonableness and prejudice hearing and for entry of findings of fact and conclusions of law, taking into consideration our caselaw.

¶44    While I agree that the charges against Gatlin should be dismissed, I would order that they be dismissed with prejudice to the merits.

¶45    I concur and dissent.


                                              /S/ JAMES C. NELSON


Justice Patricia O. Cotter joins in the Concurrence and Dissent of Justice James C. Nelson.


                                              /S/ PATRICIA O. COTTER