DA 09-0403

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 163

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

SHAWN DAVID STRONG,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Seventh Judicial District,
                   In and For the County of Prairie, Cause No. DC 08-02
                   Honorable Richard A. Simonton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Joslyn Hunt, Chief Appellate Defender; Jennifer A. Hurley,
                Assistant Appellate Defender, Helena, Montana

        For Appellee:

                Steve Bullock, Montana Attorney General; Jonathan M.
                Krauss, Assistant Attorney General, Helena, Montana

                Rebecca A. Convery, Prairie County Attorney; Albert R. Batterman,
                Special Deputy Prairie County Attorney, Terry, Montana

                             Submitted on Briefs:  April 14, 2010

                                   Decided:  July 26, 2010

Filed:

          _____
                           Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Strong appeals from his conviction by a jury in the District Court of the Seventh Judicial District, Prairie County, of the felony offense of aggravated assault.  For the reasons stated below, we reverse.

¶2      Strong presents several issues for review, one of which is determinative:  Whether the District Court properly denied Strong's motion to dismiss based upon the State's failure to comply with the requirements of § 46-7-101, MCA.

## BACKGROUND

¶3      Strong is the father of K.S., who was an infant at the time of the incident for which he was charged.  Shortly before the incident Strong returned to Terry, Montana after an absence of two years, and re-entered the lives of K.S. and his mother Teal Finneman.  During Strong's absence his son had been cared for and raised by Finneman and her parents.  Strong was unemployed and started staying with K.S. while Finneman worked her night shift as a nurse's assistant at a nursing home.

¶4      On the night of March 24, 2008, Strong was alone with K.S. while Finneman worked.  K.S. vomited twice during the night, and when Finneman got home from work she noticed that the baby seemed to be in pain and she noticed faint bruising.  Finneman called her mother, a nurse, who came over and found the baby to be lifeless and pale and to be having difficulty breathing.  K.S. was worse the next day and after being seen by a pediatrician was hospitalized for a week in Miles City.

¶5 Medical personnel determined that K.S. was suffering from a traumatic, Grade III liver laceration which was a serious life-threatening injury. Such an injury could only be caused by severe blunt force to the abdomen seen in motor vehicle accidents, falls from heights or being kicked by a horse. Strong responded vaguely to inquiries about what could have happened to K.S. and speculated that he might have fallen on a toy. Strong was the only person who was with the child when he suffered the injury.

¶6 On March 28, 2008, the State charged Strong by information with felony aggravated assault by causing bodily injury to his son K.S. The District Court issued an arrest warrant, setting bail at $25,000, and Strong was arrested the same day. He did not make bail and remained in jail.

¶7 A month later a Public Defender attorney visiting another prisoner noticed Strong in the jail and inquired about his circumstances. On April 28 the Office of Public Defender filed a written notice of appearance as counsel for Strong. The Public Defender filed a motion to dismiss the charges on grounds not related to this appeal, but later withdrew it. On May 5, 2008, Strong was taken to his initial appearance before a Justice of the Peace, and was "bound over to District Court." The District Court denied his pre-trial motion to dismiss for violation of § 46-7-101, MCA. Strong was later convicted by a jury of aggravated assault and was sentenced to a term in prison.

## STANDARD OF REVIEW

¶8 A district court's decision applying § 46-7-101, MCA, is an issue of statutory construction that this Court reviews to determine whether it is correct. *Billings v. Peterson*, 2004 MT 232, ¶ 13, 322 Mont. 444, 97 P.3d 532.

**DISCUSSION**

¶9 This appeal arises from § 46-7-101(1), MCA, which requires that a person arrested "must be taken without unnecessary delay before the nearest and most accessible judge for an initial appearance." The duty of the judge at the initial appearance is to inform the defendant of the charges, of his right to counsel, of his right to have counsel appointed, of the circumstances under which he may seek pretrial release, of the right to refuse to make any statement, of the fact that conviction may result in the loss of rights regarding firearms, of the right to a judicial determination of probable cause if the charge was made by complaint, and of the amount of bail. Section 46-7-102, MCA. The rights listed in this statute, such as the right to counsel and the privilege against self-incrimination, have constitutional underpinnings. *State v. Gatlin*, 2009 MT 348, ¶ 25, 353 Mont. 163, 219 P.3d 874.

¶10 Forty-two days passed between Strong's arrest and his initial appearance. The State does not contest Strong's assertion that this delay violated the requirement of § 46-7-101(1), MCA, that he have an initial appearance "without unnecessary delay" after arrest. The primary issue is determining the proper consequence for a violation of the statute.[1]

¶11 Section 46-7-101, MCA, occupies an important place in the criminal justice system. This Court has recognized that the requirement for a prompt initial appearance protects the defendant from being jailed and held incommunicado for indefinite and

---

[1] The State has no explanation for the 42-day delay, and if the Public Defender had not happened upon Strong, the period of unnecessary delay may have been much longer. There is no evidence that anyone deliberately withheld Strong's initial appearance.

4

possibly protracted periods of time. *Gatlin*, ¶ 22. Closely associated with the requirement of a prompt initial appearance is the requirement that a defendant be informed without unnecessary delay of the important rights set out in § 46-7-102, MCA. *Gatlin*, ¶ 23. These two sections together ensure that a criminal prosecution begins promptly and with a recognition of the defendant's essential rights.

¶12     Section 46-7-101(1), MCA, itself does not provide any sanction for a violation of its requirement for a prompt initial appearance[2] and this Court has applied differing consequences. In *State v. Benbo*, 174 Mont. 252, 262, 570 P.2d 894, 900 (1977), we held that the defendant was entitled to suppression of inculpatory evidence developed by law enforcement during a period of unnecessary delay before his initial appearance. In *State v. Rodriquez*, 192 Mont. 411, 418, 628 P.2d 280, 284 (1981), we "strongly disapprove[d]" any attempt by the State to avoid the requirements of the statute and warned that if a defendant can show prejudice or a deliberate attempt to avoid a speedy initial appearance, "we will not hesitate to fashion an appropriate remedy." We fashioned no such remedy in *State v. Dieziger*, 200 Mont. 267, 270, 650 P.2d 800, 802 (1982), rejecting the defendant's motion to dismiss the charges against him for an

---

[2] Other states have struggled with the consequences of similar "unnecessary delay" statutes or rules that also provide no consequence for a violation. Almost exclusively the issue, as in *Benbo*, has been whether a delay in providing an initial appearance warrants or requires exclusion of evidence or confessions obtained during the period of unnecessary delay. Note, *Commonwealth v. Duncan*: *Prearraignment Delay and the Failure of the Exclusionary Rule as a Remedy*, 49 U. Pitt. L. Rev. 1159 (1988). Cases dealing with unnecessary delay claims often arise in the context of delays of a few days or even a few hours. *See State v. Taylor*, 538 P.2d 1375 (Kan. 1975) (42 hour delay); *People v. Mallory*, 365 N.W.2d 673 (Mich. 1984) (60 hour delay). Under 18 USC § 3501(c) the examination of unnecessary delay begins 6 hours after arrest.

asserted violation of the statute. The defendant had not made a motion to suppress as in *Benbo*; he was in the Montana State Prison at the time of the offense so an arrest was unnecessary; and he was unable to demonstrate any prejudice.

¶13 As long ago as the *Benbo* case in 1977 we recognized that the requirements of § 46-7-101(1), MCA, could be meaningless unless there was an "incentive" for officials to follow its requirements. *Benbo*, 174 Mont. at 259, 570 P.2d at 899. The incentive provided in *Benbo* was suppression of evidence against the defendant obtained during a period of unnecessary delay before the initial appearance. While not mentioned in the *Benbo* opinion, we later stated that providing a remedy or consequence for violation of the statute was based upon our supervisory power over lower courts. *State v. Beach*, 217 Mont. 132, 149, 705 P.2d 94, 105 (1985), *relying upon McNabb v. United States*, 318 U.S. 332, 63 S. Ct. 608 (1943). In Montana, this Court has general supervisory control over all other courts. Montana Const. Art. VII, sec. 2. *See also Miranda v. Arizona*, 384 U.S. 436, 443-44, 86 S. Ct. 1602, 1612 (1966), where the Court recognized the necessity to insure that "rights declared in words [not become] lost in reality."

¶14 It is clear from the facts of the present case that the *Benbo* suppression remedy is insufficient incentive for officials to follow § 46-7-101(1), MCA, and that without more the statutory rights will often become "lost in reality." We have held that unnecessarily delaying a defendant's initial appearance before a judge "shocks" the concepts of fundamental fairness and due process, and that failure to promptly inform a defendant of his right to counsel taints the fundamental fairness of all subsequent proceedings in the case. *Gatlin*, ¶¶ 22, 23. In *Gatlin* the defendant was provided an initial appearance

6

without unnecessary delay, but there was no evidence that the presiding judge advised defendant of his rights to counsel, as required by § 46-7-102, MCA. This Court concluded that the appropriate remedy was to vacate the conviction and order the charges dismissed, without prejudice. *Gatlin*, ¶ 23.

¶15 While the present case arises from a violation of § 46-7-101, MCA, and *Gatlin* arose from a violation of § 46-7-102, MCA, the requirements of those two statutes are closely intertwined and interdependent. The former requires that the defendant be brought before a judge without unnecessary delay, and the latter specifies the information and advisories that the judge then must furnish. Therefore, if dismissal were the appropriate remedy in *Gatlin* based upon failure to provide the defendant with all the information and advisories required at the initial appearance, then manifestly dismissal is the appropriate remedy if the initial appearance itself is unnecessarily delayed.[3]

¶16 Contrary to the dissent, this opinion does not ignore the law established by prior cases; it does just the opposite. Our 1977 decision in *Benbo* endorsed granting a defendant's motion to suppress evidence as a consequence for an unnecessarily delayed initial appearance. *Benbo* does not indicate, however, that suppression is the *only* consequence, and the opinion noted that unless there is evidence to suppress, failure to provide a prompt initial appearance would never be taken into account. *Benbo*, 174 Mont. at 259, 570 P.2d at 899. That is what happened in the present case, where the initial appearance was delayed for 42 days but there was no evidence or confession to

---

[3] In *People v. Dees*, 400 N.E.2d 1050 (Ill. App. 1980), the court also ordered dismissal of the charges following a 14-day delay in providing an initial appearance.

7

suppress. Suppression as a remedy for a violation of § 46-7-101, MCA, in such a situation would be meaningless.

¶17 The view that *Benbo* did not establish the sole possible remedy for a violation of § 46-7-101, MCA, is reflected in this Court's decision in *Rodriguez*. In that case this Court expressly stated that if a defendant can show prejudice from a deliberate attempt to circumvent the requirements of the statute, "we will not hesitate to fashion an appropriate remedy." The opinion cited *Benbo* as an "example" of an appropriate remedy, but not as *the* appropriate remedy. *Rodriguez*, 192 Mont. at 418, 628 P.2d at 284.

¶18 The next issue is whether the dismissal for failing to provide an initial appearance without unnecessary delay should be with or without prejudice. In *Gatlin* we ordered dismissal without prejudice because the defendant made no showing of specific prejudice resulting from the failure to advise him of his right to counsel. Relevant factors were that prior to Gatlin being furnished counsel, the prosecution took no steps to advance the case against him; no critical confrontations took place, and no evidence was gathered against him. There was generally no showing that the State "profited from the . . . mistake in not informing him he had the right to counsel." *Gatlin*, ¶ 27.

¶19 The facts of the present case make it clear that there is no justification for unnecessarily holding a prisoner incommunicado, unrepresented, and without the proceedings required by law. However, without a showing of specific prejudice we decline to impose the drastic remedy of dismissal with prejudice in all such cases. In the present case, Strong seeks only dismissal without prejudice. Therefore, the consequence of a

8

violation of § 46-7-101, MCA, is, in the absence of a showing of specific prejudice, dismissal of the charge without prejudice.

¶20 We re-affirm what was at least implied in *Gatlin*: if a defendant who is not afforded the rights provided by §§ 46-7-101 and -102, MCA, demonstrates material prejudice arising from an unnecessary delay in providing an initial appearance or from failure to provide required information and advisories, then dismissal with prejudice may be warranted.

¶21 We also reaffirm the holding of *Benbo*, that if the prosecution obtains evidence or a confession during a period of unnecessary delay in implementing § 46-7-101, MCA, the defendant is entitled to have that evidence or confession suppressed. *Hope v. State*, 2003 MT 191, 316 Mont. 497, 74 P.3d 1039. And, whether the prosecution has developed evidence or a confession during the period of unnecessary delay can be a factor in assessing the degree of prejudice to determine whether a dismissal should be with or without prejudice. However, *Benbo* may no longer be construed to support an argument that suppression of evidence is the only remedy a court may impose for violation of § 46-7-101, MCA.

¶22 The judgment, sentence and conviction in this case are reversed and the case is remanded to the District Court with instructions to dismiss the information without prejudice.

/S/ MIKE McGRATH

9

We concur:

/S/ BRIAN MORRIS
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART

Justice James C. Nelson, specially concurring.

¶23    I concur in the Court's decision to dismiss this case. If Strong had requested that the case be dismissed *with* prejudice, I would have agreed with him. Curiously, however, his briefs on appeal request dismissal *without* prejudice. Accordingly, because of that request, I am constrained to agree with the Court.

¶24    Typically, in cases such as this, I would argue that dismissal with prejudice is the appropriate remedy; I would not remand for a new trial. As in *State v. Gatlin*, 2009 MT 348, 353 Mont. 163, 219 P.3d 874, here the real reason that Strong was not accorded his statutory right to a timely initial appearance was that he simply fell through the cracks due to prosecutorial neglect after he was arrested. The State concedes as much. *See* Opinion, ¶ 10. As a result, like Gatlin, Strong was denied counsel; he was denied appearing before a judge to be advised of his rights; and he was denied due process of law and fundamental fairness. *Gatlin*, ¶¶ 40, 43 (Nelson and Cotter, JJ., concurring in part and dissenting in part).

¶25    In these sorts of cases, dismissal without prejudice serves to protect neither the defendant's statutory rights nor his constitutional rights. Indeed, having already once

been deprived of those, the State gets to start all over with a clean slate. As a consequence, in this case, for example, Strong likely will be subjected to a second trial and again be put in jeopardy of conviction. The violation of his rights by the State is, really, a nonevent—one that occurred but goes unpunished because the government is effectively exonerated from its wrongful conduct. No harm; no foul. Heads, the State wins; tails, Strong loses.

¶26 To provide an "incentive" for officials to "follow [the] requirements" of § 46-7-101(1), MCA, Opinion, ¶ 13, and to put some actual teeth in the sanction of dismissal, dismissal should be *with* prejudice. If we dismissed with prejudice, I strongly suspect that we would see fewer of these sorts of cases. When public officials have to explain to a grieving family that the victim's abuser will not be brought to justice because they—the officials—"blew it," rest assured that there will be a real-life "incentive" to get it right the first time.

¶27 I specially concur.

/S/ JAMES C. NELSON

Justice Jim Rice, dissenting.

¶28 I do not believe the Court's analysis adequately conveys that for the past 33 years we have consistently held that the remedy for violation of § 46-7-101(1), MCA, is suppression of all evidence obtained during any "unnecessary delay." *See State v. Benbo*, 174 Mont. 252, 262, 570 P.2d 894, 900 (1977); *State v. Rodriguez*, 192 Mont. 411, 418,

11

628 P.2d 280, 284 (1981); *State v. Dieziger*, 200 Mont. 267, 270, 650 P.2d 800, 802 (1982); *State v. Beach*, 217 Mont. 132, 149-50, 705 P.2d 94, 105 (1985); *Hope v. State*, 2003 MT 191, ¶ 14, 316 Mont. 497, 74 P.3d 1039; *City of Billings v. Peterson*, 2004 MT 232, ¶¶ 27-30, 322 Mont. 444, 97 P.3d 532.  In denying Strong's motion to dismiss, the District Court, citing these cases, got it exactly right by reasoning that "the proper remedy is suppression of improperly obtained evidence."

¶29    The Court fails to acknowledge the "weighty considerations" of *stare decisis* or the limited circumstances under which that "cardinal doctrine" may be contravened. *Certain v. Tonn*, 2009 MT 330, ¶ 19, 353 Mont. 21, 220 P.3d 384 (citations omitted). "Faced with viable alternatives, *stare decisis* provides the 'preferred course.'"  *Certain*, ¶ 19 (citing *State v. Kirkbride*, 2008 MT 178, ¶ 13, 343 Mont. 409, 185 P.3d 340; *Payne v. Tenn.*, 501 U.S. 808, 827, 111 S. Ct. 2597, 2609 (1991)).  Instead, the Court overrules years of precedent and adopts a new rule without demonstrating that the standards for contravening *stare decisis* have been established.

¶30    In response, the Court offers that there is flexibility within our previous decisions which relieves the *stare decisis* problem.  However, the Court's analysis is incorrect. First, in *Benbo*, we declared very clearly that "[h]enceforth, the effect of a failure to take a person before a judge without unnecessary delay after his arrest" would be suppression of evidence collected during the delay.  *Benbo*, 174 Mont. at 262, 570 P.2d at 900.  In fact, the clear statement of remedy adopted in *Benbo* was taken wholesale from previous applications of the remedy in federal and other state courts.  *Benbo*, 174 Mont. at 261-62, 570 P.2d at 899-900.  The Court offers that our holding in *Rodriguez* showed suppression

was a nonexclusive remedy, but the Court misreads this juvenile case. In *Rodriguez*, the Court acknowledged that the youth statutes, unlike the adult statutes, had no provision requiring that a youth be brought before a magistrate "without unnecessary delay." *Rodriguez*, 192 Mont. at 418, 628 P.2d at 284. In light of the absence of a statute, the Court thus stated that it would "fashion an appropriate remedy" for youth cases, but nonetheless cited to *Benbo*. *Rodriguez*, 192 Mont. at 418, 628 P.2d at 284. We were thus reaffirming the *Benbo* rule for youth cases, not indicating that alternate rules could be adopted for adult offenders. We have not even mentioned dismissal as a remedy, let alone applied it, since adoption of the suppression remedy in *Benbo*, until the Court's new venture today.

¶31 As a practical matter, suppression may be a superior remedy to dismissal because, hypothetically, the State could jail a defendant, deprive him of an initial appearance while collecting evidence, dismiss the charges, and then re-arrest him.

¶32 The new remedy adopted by the Court is unclear. I understand it to be dismissal without prejudice, unless there is specific prejudice shown which warrants dismissal with prejudice, but also "reaffirm[ing] the holding of *Benbo*," Opinion, ¶ 21, to the limited extent that evidence collected during a period of delay can also be considered in determining specific prejudice. The Court holds that suppression of evidence is a remedy, but not "the only remedy." Opinion, ¶ 21. I believe that clarity in the law would be served by retaining our long-established rule, and would affirm the District Court's application of it.

/S/ JIM RICE

13