CHIEF JUSTICE McGRATH
delivered the Opinion of the Court.
¶1 Appellant Mark White (White) appeals from his felony conviction for assault with a weapon in the Eighteenth Judicial District. We affirm.
¶2 We restate the following issues for review:

Issue One: Whether the District Court erred when it determined White was not mentally fit to stand trial at a proceeding in which White was not present.

Issue Two: Whether the District Court erred by failing to complete the initial appearance process.

PROCEDURAL AND FACTUAL BACKGROUND
¶3 During the early morning of Februaiy 15, 2011, Mark Ward (Ward) was delivering newspapers to the Darlington Manor in Bozeman, Montana. White lived in the Darlington Manor. After hearing noises in the hallway, White had a brief conversation with Ward and told him to never return to the building.
¶4 Ward returned the following day to deliver papers to residents of the building. As Ward was leaving the building, White confronted him, stating, “I thought I told you to get out of here and never come back.” White then assaulted Ward, slamming him into a door and jumping on him multiple times. After the assault ended, Ward returned to his vehicle and called 911. While on the phone, White entered the vehicle and cut Ward’s face. Ultimately, Ward was able to drive to safety and police arrested White.
¶5 During the event, White made multiple statements indicating he was suffering from mental health problems. On the 911 call, White is *334 heard referring to Ward as a “Kraut.” When police arrived at the scene, White stated, “Come on, let’s go. The Nazis are over here. Let’s go kill them.” White also told police that he was wearing gloves because he planned to cut Ward’s eyes out and feed the eyes to a cat.
¶6 On February 17, 2011, White was charged by complaint with assault with a weapon after a justice of the peace determined there was probable cause to believe he committed the offense. Soon after his placement at the Gallatin County Detention Center, White was transferred to the Hope House for psychiatric treatment. While at Hope House, White was delusional and acted aggressively. As a result, involuntary civil commitment proceedings were initiated. In late February 2011, the District Court found that probable cause existed for the offense and an information charging White with assault with a weapon was filed.
¶7 On February 28, 2011, White and his attorney, Mr. Petaja, appeared before Judge Salvagni via video from Hope House. The District Court and defense counsel had the following conversation:
The Court: You’re telling me, Mr. Petiqa, that he is not in a mental condition for me to do an Initial Appearance with him this morning; is that correct?
Mr. Petaja: Yes, Your Honor.
The Court: So it would be of no benefit to advise him about these charges filed against him; is that correct?
Mr. Petaja: Not at this time, Judge.
The Court: Okay. The Court will enter a not guilty plea at Mr. Petaja’s request to the charge of—
Mr. Petaja: They’re entering a not guilty plea, Mark.
The Court: — to the charge of assault with a weapon. The Court will issue a Conditional Release Order, however, in the criminal case.
The Court: So the Court will set bail in the amount of $20,000, will order that he shall not be released from custody until he appears before the Court setting conditions if he proposes to post bail.
¶8 The District Court then ordered a fitness evaluation pursuant to § 46-14-202, MCA. In a separate proceeding, White was civilly committed to the Montana State Hospital and involuntarily medicated. White’s fitness-to-proceed evaluation did not begin until May 2011, after he completed his 90-day civil commitment. On July 22, 2011, *335 doctors at Montana State Hospital issued a report, concluding that White suffered from schizoaffective disorder, a mental disease that substantially impaired his ability to rationally understand court proceedings and consult with his attorney. The State Hospital recommended an extension of White’s commitment on the issue of fitness to proceed.
¶9 On August 1,2011, the District Court conducted a review hearing pursuant to § 46-14-221, MCA. White remained at the State Hospital and did not participate in the hearing. Neither the prosecutor nor defense counsel contested the report’s findings. The District Court determined White was unfit to proceed, relying exclusively on the Montana State Hospital report and continued White’s commitment.
¶10 In a subsequent report, dated October 6,2011, doctors concluded that White had regained the ability to rationally understand the proceedings and consult with his attorney. Staff further reported that White had the substantial capacity to form the particular mental state that was an element of the offense, but that his schizoaffective disorder substantially impaired his capacity to conform his conduct to the law at the time of the offense. Subsequently, White was transferred to the Gallatin County Detention Center. After months of continuances, an omnibus hearing was held in May 2012. The District Court did not conduct an initial appearance after White was deemed fit.
¶11 White waived his right to a jury trial and Judge Salvagni conducted a bench trial. Judge Salvagni found White guilty of assault with a weapon. White was sentenced to twenty years with the Department of Public Health and Human Services. Section 46-14-312(2), MCA, allows a criminal defendant to be committed to the custody of the Department of Health and Human Services if the court finds that the defendant suffered from a mental disease, defect, or developmental disability at the time of the crime.
STANDARD OF REVIEW
¶12 Whether a criminal defendant’s right to be present at a critical stage has been violated is a question of constitutional law. State v. Matt, 2008 MT 444, ¶ 12, 347 Mont. 530, 199 P.3d 244 (overruled in part by State v. Charlie, 2010 MT 195, 357 Mont. 355, 239 P.3d 934). This Court exercises plenary review over constitutional questions. Charlie, ¶ 21.
¶13 Whether an initial appearance is sufficient to satisfy the requirement of §§ 46-7-101-102, MCA, is an issue of statutory construction that we review for correctness. State v. Gatlin, 2009 MT *336 348, ¶ 16, 353 Mont. 163, 219 P.3d 874.
¶14 Appellants must make a timely objection or risk waiver for purposes of the appeal. State v. Reim, 2014 MT 108, ¶ 28, 374 Mont. 487, 323 P.3d 880 (citing § 46-20-104(2), MCA). “We will not put a district court in error for an action in which the appealing party acquiesced or actively participated.” Reim, ¶ 28 (citations omitted). At the Court’s discretion, we may review unpreserved claims under the plain error doctrine. Reim, ¶ 29 (citations omitted). Plain error review is appropriate where fundamental rights are implicated and the appellant convinces the Court that failing to review the claimed error would result in “a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process.” Reim, ¶ 38 (citations omitted).
DISCUSSION
¶15 Issue One: Whether the District Court erred when it determined White was not mentally fit to stand trial at a proceeding in which White was not present.
¶16 White asserts on appeal that the District Court erred by making a fitness determination at the August 1, 2011 hearing without him present. White argues that the fitness determination was a critical stage in the case and that his exclusion resulted in a violation of his fundamental right to participate in his own defense.
¶17 In response, the State argues that in situations where neither the prosecutor nor the defense counsel contests the findings of the fitness report, the district court may determine fitness based on the report alone, without conducting a hearing. The State asserts that the District Court acted in conformity with § 46-14-221(1), MCA, noting that White has not challenged the constitutionality of the statute. Finally, the State maintains that White suffered no prejudice due to his absence from the proceeding.
¶18 The prosecution ofan incompetent individual violates due process. Drope v. Missouri, 420 U.S. 162, 171, 95 S. Ct. 896, 903 (1975).[1] Persons whose mental condition renders them unable to understand the proceedings against them or to assist in their own defense may not *337 be tried, convicted, or sentenced so long as the incapacity continues. Section 46-14-103, MCA; Drope, 420 U.S. at 171, 95 S. Ct. at 903. The trial court has a sua sponte duty to order a fitness determination “if the court has reasonable grounds for concluding that there is a good faith doubt as to a defendant’s competency.” State v. Bartlett, 282 Mont. 114, 120, 935 P.2d 114, 117 (1997).
¶19 Both the United States and Montana Constitutions guarantee the right to be present at all critical stages of a criminal prosecution. Kentucky v. Stincer, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667 (1987); Reim, ¶ 36. A “critical stage” includes “any step of the proceeding where there is potential for substantial prejudice to the defendant.” Charlie, ¶ 40 (citations omitted). A defendant waives this right only through an on-the-record statement acknowledging that he voluntarily, intelligently, and knowingly waives his right to be present. Matt, ¶ 69. ¶20 A defendant’s absence from a critical stage is subject to harmless error review. Matt, ¶ 35. The State must persuade the Court, “based upon the record before us and given the interests the right of presence was designed to protect, that the violation was harmless.” Charlie, ¶ 45. More precisely, this requires the State to show that “there is no ‘reasonable possibility’ that the violation of the defendant’s right to be present caused him prejudice.” Charlie, ¶ 40 (citing Matt, ¶ 35).
¶21 Neither the United States Supreme Court nor this Court has determined whether a fitness to proceed determination constitutes a critical stage of a criminal prosecution. Because we conclude that White’s absence from the fitness proceeding did not cause him prejudice, we will not address the initial questions of whether the fitness proceeding constituted a “critical stage” or whether White waived his right of presence. We will assume for purposes of analysis that the proceeding constituted a critical stage and that White did not waive his right to be present.
¶22 What remains is whether White suffered prejudice due to his exclusion from the August 1 proceeding. The Court is persuaded, based on the record and given the interests the right of presence was designed to protect, that White was not prejudiced by his absence.
¶23 The District Court acted according to the directives of § 46-14-221(1), MCA. White asserts that he was denied the opportunity to personally observe the demeanor of Judge Salvagni and the prosecutor, to hear the arguments, and to observe his counsel’s performance. While these factors maybe important in a contested healing where testimony is given and conflicting accounts are provided, these considerations are not critical in this case. Here, the proceeding was not adversarial, no *338 witnesses testified, and neither party contested the findings of the Montana State Hospital report.
¶24 White also maintains that, had he been present, he would have contested the report’s conclusion that he was unfit. During the early course of his commitment, White maintained that he was sane; however, later he acknowledged his mental illness and continued to take his medicine after the involuntary medication order expired. And, while White may have contested his fitness, the reports from the Montana State Hospital establish that White’s ability to consult with his attorney and understand the criminal process was substantially impaired by his schizoaffective disorder at the time. There is no reasonable probability that White’s presence at the proceeding would have altered the District Court’s conclusion that White was unfit to proceed.
¶25 Finally, White’s absence from the proceeding does not render the result unjust or unfair. White was not tried until after he was found fit. The Ninth Circuit’s decision, Sturgis v. Goldsmith, 796 F.2d 1103 (9th Cir. 1986), is instructive, ha Sturgis, the court concluded that the defendant had a constitutional right to be present at his competency hearing. Sturgis, 796 F.2d at 1112. However, the court held that “if the government can prove that [the defendant] was, in fact, competent at the time of trial, the error will not require reversal of the conviction.” Sturgis, 796F.2d at 1109. Here, although White was not present at the fitness proceeding, he was fit at the time of trial. Once Mr. Petaja raised the issue of fitness, the District Court had a duty to determine White’s fitness through an evaluation. The State did not move forward with the prosecution until White was deemed fit. Clearly, he was not prejudiced.
¶26 Issue Two: Whether the District Court erred by failing to complete the initial appearance process.
¶27 White argues his due process rights were violated when the District Court failed to comply with the requirements of §§ 46-7-101 and 102, MCA. He maintains that State v. Gatlin, 2009 MT 348, 353 Mont. 163, 219 P.3d 874 controls and due process requires the initial appearance. White concedes that his trial counsel failed to raise the issue below and requests this Court’s review under the plain error doctrine. The State maintains that White’s counsel acquiesced in the error by agreeing with Judge Salvagni’s statement that, “it would be of no benefit to advise him about these charges filed against him.” As such, the State argues plain error review is inappropriate.
¶28 Montana’s initial appearance law requires law enforcement to *339 bring an arrested individual before the nearest and most accessible judge without unnecessary delay. Section 46-7-101, MCA. At the initial appearance, the judge must inform the defendant of the following: the charges against him, the right to counsel and the right to appointed counsel if indigent, the general circumstances under which the defendant may seek pre-trial release, the right to remain silent and a warning that any statement may be used against him, the potential loss of various firearms rights if convicted, and the right to a probable cause determination by a judge. Section 46-7-102, MCA.
¶29 Here, an initial appearance was conducted and White was present with his attorney. However, the proceeding failed to comply with the requirements of the initial appearance statute. Clearly, it was necessary to delay the initial appearance at the February 28, 2011 proceeding, when it appeared to Judge Salvagni and counsel that White lacked the capacity to understand the proceeding.[2] Nevertheless, it was an error to fail to comply with § 46-7-102, MCA, once White was deemed fit.
¶30 Notably, defense counsel failed to object or request an initial appearance after White was deemed fit. Generally, failure to make a timely objection constitutes a waiver of the objection for purposes of appeal. Section 46-20-104(2), MCA; Reim, ¶ 28. “We will not put a district court in error for an action in which the appealing party acquiesced or actively participated.” Reim, ¶ 28 (citations omitted). As discussed above, this Court may review unpreserved claims implicating a defendant’s fundamental constitutional rights where failing to review would result in “a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process.” Reim, ¶ 38 (citations omitted). Here, there is no indication that White was prejudiced by the incomplete proceeding such that it calls into question the fundamental fairness of the process or resulted in a manifest miscarriage of justice. ¶31 Individuals are guaranteed due process before deprivation of life, liberty, or property. U.S. Const, amend 14; Mont. Const, art. H, § 17. The United States Supreme Court has held that pre-trial detentions are deprivations of liberty that require due process. Gerstein v. Pugh, 420 U.S. 103, 114, 95 S. Ct. 854, 863 (1975). To satisfy the due process requirements, defendants must be afforded a pre-trial, judicial *340 determination of probable cause. Gerstein, 420 U.S. at 114, 95 S. Ct. at 863 (1975). Here, following White’s arrest, a justice of the peace evaluated the State’s affidavit and made a determination that probable cause existed for the arrest. Moreover, a district court judge conducted a second probable cause determination before the State filed the Information.
¶32 Further, White was represented by counsel during the entire course of his civil commitment and prosecution. The State provided White copies of the Information charging him with assault with a weapon and the accompanying affidavit. Judge Salvagni set bail and entered a not guilty plea. The State Hospital report notes that White was aware of his right to remain silent and the State did not use any post-arrest statements against White. Finally, although White was never informed of the possible consequences on his ability to possess firearms, he had already lost those rights due to his civil commitments.[3] While the District Court did not verbally inform White of a number of rights, White received the actual realization of those rights. Notably, White does not contend otherwise.
¶33 White’s case is distinguishable from State v. Gatlin, 2009 MT 348, 353 Mont. 163, 219 P.3d 874 and State v. Strong, 2010 MT 163, 357 Mont. 114, 236 P.3d 580, both of which dealt primarily with the proper remedy for violating §§ 46-7-101 and 102, MCA. At the onset, it is important to note that in both cases, trial counsel objected to the failure to provide an initial appearance, thus preserving the issue and implicating a different standard of review. Additionally, both cases centered on the failure to advise of the right to counsel, acknowledging that defendants often lack the legal knowledge of a trained lawyer. ¶34 In Gatlin, an initial appearance was held, however it did not meet the requirements of § 46-7-102, MCA. The court failed to inform the defendant of his right to counsel, that an attorney would be appointed if he could not afford one, and of his right to a probable cause determination. Gatlin, ¶ 18. The Court noted that the purpose of an initial appearance is to ensure that a defendant is not "held incommunicado for a protracted time.” Gatlin, ¶ 22. In Strong, the defendant was jailed and held incommunicado for forty-two days *341 without an initial appearance. Strong, ¶ 10. Strong had an initial appearance only after a public defender noticed him while visiting another prisoner in jail and inquired into his case. Strong, ¶ 7.
¶35 White’s case is distinguishable from the scenarios of Strong and Gatlin. Here, White was not held incommunicado, rather he had an attorney throughout the case, even during times when other criminal defendants are typically not represented. Unlike Gatlin, who was jailed for three months without counsel on some of the charges pending against him, White had capable representation from day one. The purpose of the initial appearance statute is to protect the defendant from extended jail time without the assistance of counsel and knowledge of certain rights. Strong, ¶ 11; Gatlin, ¶ 22. Here, the interest that the initial appearance statute was designed to protect were safeguarded. White had capable counsel, was not jailed and isolated from legal assistance for a protracted period, and the error was never raised in the District Court.
¶36 We decline to exercise plain error review. White was not prejudiced by his absence from the fitness proceeding. Additionally, we conclude that White was not prejudiced by the District Court’s failure to provide the advisories in § 46-7-102, MCA. White has not established that a manifest miscarriage of justice occurred compromising the fundamental fairness of the trial or the integrity of the judicial process.
¶37 Affirmed.
JUSTICES BAKER, SHEA, COTTER, WHEAT and RICE concur.

 Montana uses the terns “fitness,” “fit,” and “unfit.” This Court treats fitness as meaning the same thing as competency, the term used by the U.S. Supreme Court. See State v. Bostick, 1999 MT 237, 296 Mont. 149, 988 P.2d 765 (using the terms interchangeably).

 Section46-14-221, MCA, requires a district court to determine fitness if the issue is raised. If the court determines that the defendant lacks capacity to proceed, the proceeding must be suspended until the defendant is fit.

 18 U.S.C. § 922(g)(4) provides, “It shall be unlawful for any person who has been adjudicated as a mental defective or who has been committed to a mental institution to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.”