CHIEF JUSTICE McGRATH
delivered the Opinion of the Court.
¶1 Strong appeals from his conviction by a jury in the District Court of the Seventh Judicial District, Prairie County, of the felony offense of aggravated assault. For the reasons stated below, we reverse.
¶2 Strong presents several issues for review, one of which is determinative: Whether the District Court properly denied Strong’s motion to dismiss based upon the State’s failure to comply with the requirements of § 46-7-101, MCA.
BACKGROUND
¶3 Strong is the father of K.S., who was an infant at the time of the incident for which he was charged. Shortly before the incident Strong returned to Terry, Montana after an absence of two years, and reentered the lives of K.S. and his mother Teal Finneman. During Strong’s absence his son had been cared for and raised by Finneman and her parents. Strong was unemployed and started staying with K.S. while Finneman worked her night shift as a nurse’s assistant at a nursing home.
¶4 On the night of March 24, 2008, Strong was alone with K.S. while Finneman worked. K.S. vomited twice during the night, and when Finneman got home from work she noticed that the baby seemed to be in pain and she noticed faint bruising. Finneman called her mother, a nurse, who came over and found the baby to be lifeless and pale and to be having difficulty breathing. K.S. was worse the next day and after *116 being seen by a pediatrician was hospitalized for a week in Miles City.
¶5 Medical personnel determined that K.S. was suffering from a traumatic, Grade III liver laceration which was a serious life-threatening injury. Such an injury could only be caused by severe blunt force to the abdomen seen in motor vehicle accidents, falls from heights or being kicked by a horse. Strong responded vaguely to inquiries about what could have happened to K.S. and speculated that he might have fallen on a toy. Strong was the only person who was with the child when he suffered the injury.
¶6 On March 28, 2008, the State charged Strong by information with felony aggravated assault by causing bodily injury to his son K.S. The District Court issued an arrest warrant, setting bail at $25,000, and Strong was arrested the same day. He did not make bail and remained in jail.
¶7 A month later a Public Defender attorney visiting another prisoner noticed Strong in the jail and inquired about his circumstances. On April 28 the Office of Public Defender filed a written notice of appearance as counsel for Strong. The Public Defender filed a motion to dismiss the charges on grounds not related to this appeal, but later withdrew it. On May 5, 2008, Strong was taken to his initial appearance before a Justice of the Peace, and was “bound over to District Court.” The District Court denied his pre-trial motion to dismiss for violation of § 46-7-101, MCA. Strong was later convicted by a jury of aggravated assault and was sentenced to a term in prison.
STANDARD OF REVIEW
¶8 A district court’s decision applying § 46-7-101, MCA, is an issue of statutory construction that this Court reviews to determine whether it is correct. Billings v. Peterson, 2004 MT 232, ¶ 13, 322 Mont. 444, 97 P.3d 532.
DISCUSSION
¶9 This appeal arises from § 46-7-101(1), MCA, which requires that a person arrested “must be taken without unnecessary delay before the nearest and most accessible judge for an initial appearance.” The duty of the judge at the initial appearance is to inform the defendant of the charges, of his right to counsel, of his right to have counsel appointed, of the circumstances under which he may seek pretrial release, of the right to refuse to make any statement, of the fact that conviction may result in the loss of rights regarding firearms, of the right to a judicial determination of probable cause if the charge was made by complaint, *117 and of the amount of bail. Section 46-7-102, MCA. The rights listed in this statute, such as the right to counsel and the privilege against self-incrimination, have constitutional underpinnings. State v. Gatlin, 2009 MT 348, ¶ 25, 353 Mont. 163, 219 P.3d 874.
¶10 Forty-two days passed between Strong’s arrest and his initial appearance. The State does not contest Strong’s assertion that this delay violated the requirement of § 46-7-101(1), MCA, that he have an initial appearance “without unnecessary delay” after arrest. The primary issue is determining the proper consequence for a violation of the statute.[1]
¶11 Section 46-7-101, MCA, occupies an important place in the criminal justice system. This Court has recognized that the requirement for a prompt initial appearance protects the defendant from being jailed and held incommunicado for indefinite and possibly protracted periods of time. Gatlin, ¶ 22. Closely associated with the requirement of a prompt initial appearance is the requirement that a defendant be informed without unnecessary delay of the important rights set out in § 46-7-102, MCA. Gatlin, ¶ 23. These two sections together ensure that a criminal prosecution begins promptly and with a recognition of the defendant’s essential rights.
¶12 Section 46-7-101(1), MCA, itself does not provide any sanction for a violation of its requirement for a prompt initial appearance[2] and this Court has applied differing consequences. In State v. Benbo, 174 Mont. 252, 262, 570 P.2d 894, 900 (1977), we held that the defendant was entitled to suppression of inculpatory evidence developed by law enforcement during a period of unnecessary delay before his initial appearance. In State v. Rodriquez, 192 Mont. 411, 418, 628 P.2d 280, 284 (1981), we “strongly disapprove^]” any attempt by the State to *118 avoid the requirements of the statute and warned that if a defendant can show prejudice or a deliberate attempt to avoid a speedy initial appearance, “we will not hesitate to fashion an appropriate remedy.” We fashioned no such remedy in State v. Dieziger, 200 Mont. 267, 270, 650 P.2d 800, 802 (1982), rejecting the defendant’s motion to dismiss the charges against him for an asserted violation of the statute. The defendant had not made a motion to suppress as in Benbo; he was in the Montana State Prison at the time of the offense so an arrest was unnecessary; and he was unable to demonstrate any prejudice.
¶13 As long ago as the Benbo case in 1977 we recognized that the requirements of § 46-7-101(1), MCA, could be meaningless unless there was an “incentive” for officials to follow its requirements. Benbo, 174 Mont. at 259, 570 P.2d at 899. The incentive provided in Benbo was suppression of evidence against the defendant obtained during a period of unnecessary delay before the initial appearance. While not mentioned in the Benbo opinion, we later stated that providing a remedy or consequence for violation of the statute was based upon our supervisory power over lower courts. State v. Beach, 217 Mont. 132, 149, 705 P.2d 94, 105 (1985), relying upon McNabb v. United States, 318 U.S. 332, 63 S. Ct. 608 (1943). In Montana, this Court has general supervisory control over all other courts. Montana Const. Art. VII, sec. 2. See also Miranda v. Arizona, 384 U.S. 436, 443-44, 86 S. Ct. 1602, 1612 (1966), where the Court recognized the necessity to insure that “rights declared in words [not become] lost in reality.”
¶14 It is clear from the facts of the present case that the Benbo suppression remedy is insufficient incentive for officials to follow § 46-7-101(1), MCA, and that without more the statutory rights will often become “lost in reality.” We have held that unnecessarily delaying a defendant’s initial appearance before a judge “shocks” the concepts of fundamental fairness and due process, and that failure to promptly inform a defendant of his right to counsel taints the fundamental fairness of all subsequent proceedings in the case. Gatlin, ¶¶ 22, 23. In Gatlin the defendant was provided an initial appearance without unnecessary delay, but there was no evidence that the presiding judge advised defendant of his rights to counsel, as required by § 46-7-102, MCA. This Court concluded that the appropriate remedy was to vacate the conviction and order the charges dismissed, without prejudice. Gatlin, ¶ 23.
¶15 While the present case arises from a violation of § 46-7-101, MCA, and Gatlin arose from a violation of § 46-7-102, MCA, the requirements of those two statutes are closely intertwined and interdependent. The *119 former requires that the defendant be brought before a judge without unnecessary delay, and the latter specifies the information and advisories that the judge then must furnish. Therefore, if dismissal were the appropriate remedy in Gatlin based upon failure to provide the defendant with all the information and advisories required at the initial appearance, then manifestly dismissal is the appropriate remedy if the initial appearance itself is unnecessarily delayed.[3]
¶16 Contrary to the dissent, this opinion does not ignore the law established by prior cases; it does just the opposite. Our 1977 decision in Benbo endorsed granting a defendant’s motion to suppress evidence as a consequence for an unnecessarily delayed initial appearance. Benbo does not indicate, however, that suppression is the only consequence, and the opinion noted that unless there is evidence to suppress, failure to provide a prompt initial appearance would never be taken into account. Benbo, 174 Mont. at 259, 570 P.2d at 899. That is what happened in the present case, where the initial appearance was delayed for 42 days but there was no evidence or confession to suppress. Suppression as a remedy for a violation of § 46-7-101, MCA, in such a situation would be meaningless.
¶17 The view that Benbo did not establish the sole possible remedy for a violation of § 46-7-101, MCA, is reflected in this Court’s decision in Rodriguez. In that case this Court expressly stated that if a defendant can show prejudice from a deliberate attempt to circumvent the requirements of the statute, “we will not hesitate to fashion an appropriate remedy.” The opinion cited Benbo as an “example” of an appropriate remedy, but not as the appropriate remedy. Rodriguez, 192 Mont. at 418, 628 P.2d at 284.
¶18 The next issue is whether the dismissal for failing to provide an initial appearance without unnecessary delay should be with or without prejudice. In Gatlin we ordered dismissal without prejudice because the defendant made no showing of specific prejudice resulting from the failure to advise him of his right to counsel. Relevant factors were that prior to Gatlin being furnished counsel, the prosecution took no steps to advance the case against him; no critical confrontations took place, and no evidence was gathered against him. There was generally no showing that the State “profited from the ... mistake in not informing him he had the right to counsel.” Gatlin, ¶ 27.
*120 ¶19 The facts of the present case make it clear that there is no justification for unnecessarily holding a prisoner incommunicado, unrepresented, and without the proceedings required by law. However, without a showing of specific prejudice we decline to impose the drastic remedy of dismissal with prejudice in all such cases. In the present case, Strong seeks only dismissal without prejudice. Therefore, the consequence of a violation of § 46-7-101, MCA, is, in the absence of a showing of specific prejudice, dismissal of the charge without prejudice.
¶20 We re-affirm what was at least implied in Gatlin: if a defendant who is not afforded the rights provided by §§ 46-7-101 and -102, MCA, demonstrates material prejudice arising from an unnecessary delay in providing an initial appearance or from failure to provide required information and advisories, then dismissal with prejudice may be warranted.
¶21 We also reaffirm the holding of Benbo, that if the prosecution obtains evidence or a confession during a period of unnecessary delay in implementing § 46-7-101, MCA, the defendant is entitled to have that evidence or confession suppressed. Hope v. State, 2003 MT 191, 316 Mont. 497, 74 P.3d 1039. And, whether the prosecution has developed evidence or a confession during the period of unnecessary delay can be a factor in assessing the degree of prejudice to determine whether a dismissal should be with or without prejudice. However, Benbo may no longer be construed to support an argument that suppression of evidence is the only remedy a court may impose for violation of § 46-7-101, MCA.
¶22 The judgment, sentence and conviction in this case are reversed and the case is remanded to the District Court with instructions to dismiss the information without prejudice.
JUSTICES MORRIS, WHEAT, COTTER and LEAPHART concur.

 The State has no explanation for the 42-day delay, and if the Public Defender had not happened upon Strong, the period of unnecessary delay may have been much longer. There is no evidence that anyone deliberately withheld Strong’s initial appearance.

 Other states have struggled with the consequences of similar “unnecessary delay” statutes or rules that also provide no consequence for a violation. Almost exclusively the issue, as in Benbo, has been whether a delay in providing an initial appearance warrants or requires exclusion of evidence or confessions obtained during the period of unnecessary delay. Note, Commonwealth v. Duncan: Prearraignment Delay and the Failure of the Exclusionary Rule as a Remedy, 49 U. Pitt. L. Rev. 1159 (1988). Cases dealing with unnecessary delay claims often arise in the context of delays of a few days or even a few hours. See State v. Taylor, 538 P.2d 1375 (Kan. 1975) (42 hour delay); People v. Mallory, 365 N.W.2d 673 (Mich. 1984) (60 hour delay). Under 18 USC § 3501(c) the examination of unnecessary delay begins 6 hours after arrest.

 In People v. Dees, 400 N.E.2d 1050 (Ill. App. 1980), the court also ordered dismissal of the charges following a 14-day delay in providing an initial appearance.