DA 13-0589

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 335

STATE OF MONTANA,

　　　　Plaintiff and Appellee,

　　v.

MARK NICHOLAS WHITE,

　　　　Defendant and Appellant.

APPEAL FROM:　　District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 11-44B
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Wade Zolynski, Chief Appellate Defender, Gregory Hood (argued),
Assistant Appellate Defender, Helena, Montana

　　　　For Appellee:

　　　　　　Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman
(argued), Assistant Attorney General, Helena, Montana

　　　　　　Marty Lambert, Gallatin County Attorney, Eric Kitzmiller, Deputy
County Attorney, Bozeman, Montana

Argued and Submitted:　October 29, 2014
Decided:　December 23, 2014

Filed:

_____
Clerk

FILED

December 23 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0589

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Appellant Mark White (White) appeals from his felony conviction for assault with a weapon in the Eighteenth Judicial District.  We affirm.

¶2      We restate the following issues for review:

*Issue One:  Whether the District Court erred when it determined White was not mentally fit to stand trial at a proceeding in which White was not present.*

*Issue Two:  Whether the District Court erred by failing to complete the initial appearance process.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3      During the early morning of February 15, 2011, Mark Ward (Ward) was delivering newspapers to the Darlington Manor in Bozeman, Montana.  White lived in the Darlington Manor.  After hearing noises in the hallway, White had a brief conversation with Ward and told him to never return to the building.

¶4      Ward returned the following day to deliver papers to residents of the building.  As Ward was leaving the building, White confronted him, stating, "I thought I told you to get out of here and never come back."  White then assaulted Ward, slamming him into a door and jumping on him multiple times.  After the assault ended, Ward returned to his vehicle and called 911.  While on the phone, White entered the vehicle and cut Ward's face.  Ultimately, Ward was able to drive to safety and police arrested White.

¶5      During the event, White made multiple statements indicating he was suffering from mental health problems.  On the 911 call, White is heard referring to Ward as a "Kraut."  When police arrived at the scene, White stated, "Come on, let's go.  The Nazis

are over here. Let's go kill them." White also told police that he was wearing gloves because he planned to cut Ward's eyes out and feed the eyes to a cat.

¶6 On February 17, 2011, White was charged by complaint with assault with a weapon after a justice of the peace determined there was probable cause to believe he committed the offense. Soon after his placement at the Gallatin County Detention Center, White was transferred to the Hope House for psychiatric treatment. While at Hope House, White was delusional and acted aggressively. As a result, involuntary civil commitment proceedings were initiated. In late February 2011, the District Court found that probable cause existed for the offense and an information charging White with assault with a weapon was filed.

¶7 On February 28, 2011, White and his attorney, Mr. Petaja, appeared before Judge Salvagni via video from Hope House. The District Court and defense counsel had the following conversation:

> **The Court**: You're telling me, Mr. Petaja, that he is not in a mental condition for me to do an Initial Appearance with him this morning; is that correct?
>
> **Mr. Petaja**: Yes, Your Honor.
>
> **The Court**: So it would be of no benefit to advise him about these charges filed against him; is that correct?
>
> **Mr. Petaja**: Not at this time, Judge.
>
> . . .
>
> **The Court**: Okay. The Court will enter a not guilty plea at Mr. Petaja's request to the charge of --

3

**Mr. Petaja**:  They're entering a not guilty plea, Mark.

**The Court**:  -- to the charge of assault with a weapon.  The Court will issue a Conditional Release Order, however, in the criminal case.

.   .   .

**The Court**:  So the Court will set bail in the amount of $20,000, will order that he shall not be released from custody until he appears before the Court setting conditions if he proposes to post bail.

¶8    The District Court then ordered a fitness evaluation pursuant to § 46-14-202, MCA.  In a separate proceeding, White was civilly committed to the Montana State Hospital and involuntarily medicated.  White's fitness-to-proceed evaluation did not begin until May 2011, after he completed his 90-day civil commitment.  On July 22, 2011, doctors at Montana State Hospital issued a report, concluding that White suffered from schizoaffective disorder, a mental disease that substantially impaired his ability to rationally understand court proceedings and consult with his attorney.  The State Hospital recommended an extension of White's commitment on the issue of fitness to proceed.

¶9    On August 1, 2011, the District Court conducted a review hearing pursuant to § 46-14-221, MCA.  White remained at the State Hospital and did not participate in the hearing.  Neither the prosecutor nor defense counsel contested the report's findings.  The District Court determined White was unfit to proceed, relying exclusively on the Montana State Hospital report and continued White's commitment.

¶10    In a subsequent report, dated October 6, 2011, doctors concluded that White had regained the ability to rationally understand the proceedings and consult with his attorney.  Staff further reported that White had the substantial capacity to form the

4

particular mental state that was an element of the offense, but that his schizoaffective disorder substantially impaired his capacity to conform his conduct to the law at the time of the offense. Subsequently, White was transferred to the Gallatin County Detention Center. After months of continuances, an omnibus hearing was held in May 2012. The District Court did not conduct an initial appearance after White was deemed fit.

¶11 White waived his right to a jury trial and Judge Salvagni conducted a bench trial. Judge Salvagni found White guilty of assault with a weapon. White was sentenced to twenty years with the Department of Public Health and Human Services. Section 46-14-312(2), MCA, allows a criminal defendant to be committed to the custody of the Department of Health and Human Services if the court finds that the defendant suffered from a mental disease, defect, or developmental disability at the time of the crime.

**STANDARD OF REVIEW**

¶12 Whether a criminal defendant's right to be present at a critical stage has been violated is a question of constitutional law. *State v. Matt*, 2008 MT 444, ¶ 12, 347 Mont. 530, 199 P.3d 244 (overruled in part by *State v. Charlie,* 2010 MT 195, 357 Mont. 355, 239 P.3d 934). This Court exercises plenary review over constitutional questions. *Charlie*, ¶ 21.

¶13 Whether an initial appearance is sufficient to satisfy the requirement of §§ 46-7-101−102, MCA, is an issue of statutory construction that we review for correctness. *State v. Gatlin*, 2009 MT 348, ¶ 16, 353 Mont. 163, 219 P.3d 874.

¶14 Appellants must make a timely objection or risk waiver for purposes of the appeal. *State v. Reim*, 2014 MT 108, ¶ 28, 374 Mont. 487, 323 P.3d 880 (citing § 46-20-104(2), MCA). "We will not put a district court in error for an action in which the appealing party acquiesced or actively participated." *Reim*, ¶ 28 (citations omitted). At the Court's discretion, we may review unpreserved claims under the plain error doctrine. *Reim*, ¶ 29 (citations omitted). Plain error review is appropriate where fundamental rights are implicated and the appellant convinces the Court that failing to review the claimed error would result in "a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process." *Reim*, ¶ 38 (citations omitted).

**DISCUSSION**

¶15 *Issue One: Whether the District Court erred when it determined White was not mentally fit to stand trial at a proceeding in which White was not present.*

¶16 White asserts on appeal that the District Court erred by making a fitness determination at the August 1, 2011 hearing without him present. White argues that the fitness determination was a critical stage in the case and that his exclusion resulted in a violation of his fundamental right to participate in his own defense.

¶17 In response, the State argues that in situations where neither the prosecutor nor the defense counsel contests the findings of the fitness report, the district court may determine fitness based on the report alone, without conducting a hearing. The State asserts that the District Court acted in conformity with § 46-14-221(1), MCA, noting that

6

White has not challenged the constitutionality of the statute. Finally, the State maintains that White suffered no prejudice due to his absence from the proceeding.

¶18    The prosecution of an incompetent individual violates due process. *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 903 (1975).[1] Persons whose mental condition renders them unable to understand the proceedings against them or to assist in their own defense may not be tried, convicted, or sentenced so long as the incapacity continues. Section 46-14-103, MCA; *Drope*, 420 U.S. at 171, 95 S. Ct. at 903. The trial court has a *sua sponte* duty to order a fitness determination "if the court has reasonable grounds for concluding that there is a good faith doubt as to a defendant's competency." *State v. Bartlett*, 282 Mont.114, 120, 935 P.2d 114, 117 (1997).

¶19    Both the United States and Montana Constitutions guarantee the right to be present at all critical stages of a criminal prosecution. *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667 (1987); *Reim*, ¶ 36. A "critical stage" includes "any step of the proceeding where there is potential for substantial prejudice to the defendant." *Charlie*, ¶ 40 (citations omitted). A defendant waives this right only through an on-the-record statement acknowledging that he voluntarily, intelligently, and knowingly waives his right to be present. *Matt*, ¶ 69.

¶20    A defendant's absence from a critical stage is subject to harmless error review. *Matt*, ¶ 35. The State must persuade the Court, "based upon the record before us and given the interests the right of presence was designed to protect, that the violation was

---

[1] Montana uses the terms "fitness," "fit," and "unfit." This Court treats fitness as meaning the same thing as competency, the term used by the U.S. Supreme Court. *See State v. Bostick*, 1999 MT 237, 296 Mont. 149, 988 P.2d 765 (using the terms interchangeably).

harmless." *Charlie*, ¶ 45. More precisely, this requires the State to show that "there is no 'reasonable possibility' that the violation of the defendant's right to be present caused him prejudice." *Charlie*, ¶ 40 (citing *Matt*, ¶ 35).

¶21 Neither the United States Supreme Court nor this Court has determined whether a fitness to proceed determination constitutes a critical stage of a criminal prosecution. Because we conclude that White's absence from the fitness proceeding did not cause him prejudice, we will not address the initial questions of whether the fitness proceeding constituted a "critical stage" or whether White waived his right of presence. We will assume for purposes of analysis that the proceeding constituted a critical stage and that White did not waive his right to be present.

¶22 What remains is whether White suffered prejudice due to his exclusion from the August 1 proceeding. The Court is persuaded, based on the record and given the interests the right of presence was designed to protect, that White was not prejudiced by his absence.

¶23 The District Court acted according to the directives of § 46-14-221(1), MCA. White asserts that he was denied the opportunity to personally observe the demeanor of Judge Salvagni and the prosecutor, to hear the arguments, and to observe his counsel's performance. While these factors may be important in a contested hearing where testimony is given and conflicting accounts are provided, these considerations are not critical in this case. Here, the proceeding was not adversarial, no witnesses testified, and neither party contested the findings of the Montana State Hospital report.

¶24 White also maintains that, had he been present, he would have contested the report's conclusion that he was unfit. During the early course of his commitment, White maintained that he was sane; however, later he acknowledged his mental illness and continued to take his medicine after the involuntary medication order expired. And, while White may have contested his fitness, the reports from the Montana State Hospital establish that White's ability to consult with his attorney and understand the criminal process was substantially impaired by his schizoaffective disorder at the time. There is no reasonable probability that White's presence at the proceeding would have altered the District Court's conclusion that White was unfit to proceed.

¶25 Finally, White's absence from the proceeding does not render the result unjust or unfair. White was not tried until after he was found fit. The Ninth Circuit's decision, *Sturgis v. Goldsmith,* 796 F.2d 1103 (9th Cir. 1986), is instructive. In *Sturgis*, the court concluded that the defendant had a constitutional right to be present at his competency hearing. *Sturgis*, 796 F.2d at 1112. However, the court held that "if the government can prove that [the defendant] was, in fact, competent at the time of trial, the error will not require reversal of the conviction." *Sturgis*, 796 F.2d at 1109. Here, although White was not present at the fitness proceeding, he was fit at the time of trial. Once Mr. Petaja raised the issue of fitness, the District Court had a duty to determine White's fitness through an evaluation. The State did not move forward with the prosecution until White was deemed fit. Clearly, he was not prejudiced.

¶26    *Issue Two: Whether the District Court erred by failing to complete the initial appearance process.*

¶27    White argues his due process rights were violated when the District Court failed to comply with the requirements of §§ 46-7-101 and 102, MCA. He maintains that *State v. Gatlin*, 2009 MT 348, 353 Mont. 163, 219 P.3d 874 controls and due process requires the initial appearance. White concedes that his trial counsel failed to raise the issue below and requests this Court's review under the plain error doctrine. The State maintains that White's counsel acquiesced in the error by agreeing with Judge Salvagni's statement that, "it would be of no benefit to advise him about these charges filed against him." As such, the State argues plain error review is inappropriate.

¶28    Montana's initial appearance law requires law enforcement to bring an arrested individual before the nearest and most accessible judge without unnecessary delay. Section 46-7-101, MCA. At the initial appearance, the judge must inform the defendant of the following: the charges against him, the right to counsel and the right to appointed counsel if indigent, the general circumstances under which the defendant may seek pre-trial release, the right to remain silent and a warning that any statement may be used against him, the potential loss of various firearms rights if convicted, and the right to a probable cause determination by a judge. Section 46-7-102, MCA.

¶29    Here, an initial appearance was conducted and White was present with his attorney. However, the proceeding failed to comply with the requirements of the initial appearance statute. Clearly, it was necessary to delay the initial appearance at the February 28, 2011 proceeding, when it appeared to Judge Salvagni and counsel that

10

White lacked the capacity to understand the proceeding.[2]  Nevertheless, it was an error to fail to comply with § 46-7-102, MCA, once White was deemed fit.

¶30  Notably, defense counsel failed to object or request an initial appearance after White was deemed fit.  Generally, failure to make a timely objection constitutes a waiver of the objection for purposes of appeal.  Section 46-20-104(2), MCA; *Reim*, ¶ 28.  "We will not put a district court in error for an action in which the appealing party acquiesced or actively participated."  *Reim*, ¶ 28 (citations omitted).  As discussed above, this Court may review unpreserved claims implicating a defendant's fundamental constitutional rights where failing to review would result in  "a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process."  *Reim*, ¶ 38 (citations omitted).  Here, there is no indication that White was prejudiced by the incomplete proceeding such that it calls into question the fundamental fairness of the process or resulted in a manifest miscarriage of justice.

¶31  Individuals are guaranteed due process before deprivation of life, liberty, or property.  U.S. Const. amend 14; Mont. Const. art. II, § 17.  The United States Supreme Court has held that pre-trial detentions are deprivations of liberty that require due process.  *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S. Ct. 854, 863 (1975).  To satisfy the due process requirements, defendants must be afforded a pre-trial, judicial determination of probable cause.  *Gerstein*, 420 U.S. at 114, 95 S. Ct. at 863 (1975).  Here, following

---

[2] Section 46-14-221, MCA, requires a district court to determine fitness if the issue is raised.  If the court determines that the defendant lacks capacity to proceed, the proceeding must be suspended until the defendant is fit.

11

White's arrest, a justice of the peace evaluated the State's affidavit and made a determination that probable cause existed for the arrest. Moreover, a district court judge conducted a second probable cause determination before the State filed the Information.

¶32 Further, White was represented by counsel during the entire course of his civil commitment and prosecution. The State provided White copies of the Information charging him with assault with a weapon and the accompanying affidavit. Judge Salvagni set bail and entered a not guilty plea. The State Hospital report notes that White was aware of his right to remain silent and the State did not use any post-arrest statements against White. Finally, although White was never informed of the possible consequences on his ability to possess firearms, he had already lost those rights due to his civil commitments.[3] While the District Court did not verbally inform White of a number of rights, White received the actual realization of those rights. Notably, White does not contend otherwise.

¶33 White's case is distinguishable from *State v. Gatlin*, 2009 MT 348, 353 Mont. 163, 219 P.3d 874 and *State v. Strong*, 2010 MT 163, 357 Mont. 114, 236 P.3d 580, both of which dealt primarily with the proper remedy for violating §§ 46-7-101 and 102, MCA. At the onset, it is important to note that in both cases, trial counsel objected to the failure to provide an initial appearance, thus preserving the issue and implicating a different standard of review. Additionally, both cases centered on the failure to advise of the right

---

[3] 18 U.S.C. § 922(g)(4) provides, "It shall be unlawful for any person who has been adjudicated as a mental defective or who has been committed to a mental institution to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

to counsel, acknowledging that defendants often lack the legal knowledge of a trained lawyer.

¶34    In *Gatlin*, an initial appearance was held, however it did not meet the requirements of § 46-7-102, MCA.  The court failed to inform the defendant of his right to counsel, that an attorney would be appointed if he could not afford one, and of his right to a probable cause determination.  *Gatlin*, ¶ 18.  The Court noted that the purpose of an initial appearance is to ensure that a defendant is not "held incommunicado for a protracted time." *Gatlin*, ¶ 22.  In *Strong,* the defendant was jailed and held incommunicado for forty-two days without an initial appearance.  *Strong*, ¶ 10.  Strong had an initial appearance only after a public defender noticed him while visiting another prisoner in jail and inquired into his case.  *Strong*, ¶ 7.

¶35    White's case is distinguishable from the scenarios of *Strong* and *Gatlin*.  Here, White was not held incommunicado, rather he had an attorney throughout the case, even during times when other criminal defendants are typically not represented.  Unlike *Gatlin*, who was jailed for three months without counsel on some of the charges pending against him, White had capable representation from day one.  The purpose of the initial appearance statute is to protect the defendant from extended jail time without the assistance of counsel and knowledge of certain rights.  *Strong*, ¶ 11; *Gatlin*, ¶ 22.  Here, the interest that the initial appearance statute was designed to protect were safeguarded.  White had capable counsel, was not jailed and isolated from legal assistance for a protracted period, and the error was never raised in the District Court.

13

¶36 We decline to exercise plain error review. White was not prejudiced by his absence from the fitness proceeding. Additionally, we conclude that White was not prejudiced by the District Court's failure to provide the advisories in § 46-7-102, MCA. White has not established that a manifest miscarriage of justice occurred compromising the fundamental fairness of the trial or the integrity of the judicial process.

¶37 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

Justice McKinnon specially concurs as to Issue One and dissents as to Issue Two.

¶38 I agree with the Court's ultimate resolution of Issue One, concluding that White's conviction should not be reversed due to his absence from a status hearing held August 1, 2011. At that hearing, the District Court did not determine White was fit to proceed, but rather adopted the uncontested finding of incompetency and continued White's

14

commitment at Montana State Hospital for him to regain his fitness to proceed. At the subsequent October 24, 2011 hearing, which White was present for, the District Court issued its determination White had regained his fitness. This determination was similarly based on an uncontested report from Montana State Hospital. I therefore disagree with the Court's analysis that suggests a competency hearing was actually held and analyzes whether White was absent from a critical stage of his trial. Pursuant to the statutory criteria of § 46-14-221(1), MCA, a competency hearing was never required and the District Court did not hold one. White does not challenge the procedure set forth in § 46-14-221(1), MCA, and I thus find inappropriate any harmless error review. The District Court complied with the provisions of § 46-14-221(1), MCA, and neither party lodged any objections to the procedure.

¶39 Section 46-14-221(1), MCA, allows the trial court to make a fitness determination without a hearing when the report filed under § 46-14-206, MCA, is not contested. The relevant provision states:

> If neither the prosecutor nor the defendant's counsel contests the finding of the report filed under 46-14-206, the court may make the determination on the basis of the report. If the finding is contested, the court shall hold a hearing on the issue. If the report is received in evidence upon the hearing, the parties have the right to subpoena and cross-examine the psychiatrists or licensed clinical psychologists who joined in the report and to offer evidence upon the issue.

Thus, it is only when the finding is contested that a hearing is required. White's presence was not necessary at the August 1, 2011 status hearing when the District Court adopted

the uncontested incompetency finding of the report.[1]  Indeed, based on § 46-14-221(1), MCA, the District Court could have adopted the findings without a hearing and outside the presence of counsel.

¶40     The District Court conducted five status/review hearings where it attempted to resolve the issue surrounding White's fitness to proceed.  At the first three hearings, held April 25, 2011, May 23, 2011, and July 11, 2011, Montana State Hospital had not completed its report and proceedings had to be continued on each occasion.  By the time of the August 1, 2011 hearing, Montana State Hospital had completed its evaluation, as required by § 46-14-206, MCA, and determined White was not fit to proceed.  This finding was not contested by White or the State.  The District Court then adopted these uncontested findings and continued the matter and White's commitment to allow additional time for White to gain his fitness to proceed.  At the fifth hearing, held October 25, 2011, the District Court again adopted the uncontested findings of the report, this time that White had regained his fitness to proceed.  White was present for this hearing on October 25, 2011.  He does not challenge any aspect of the October 25, 2011

---

[1]  A defendant has a "right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings."  *Faretta v. California*, 422 U.S. 806, 819 n.15, 95 S. Ct. 2525, 2533 n.15 (1975).  However, the right to be present is not absolute.  *Illinois v. Allen*, 397 U.S. 337, 342-43, 90 S. Ct. 1057, 1060-61 (1970).  I do not mean to suggest that any aspect of a criminal proceeding should be conducted in the defendant's absence—even a status or review hearing.  It is the burden of the District Court to determine whether a defendant's presence is necessary based upon a multitude of factors.  I believe it safe to say that most district judges, when aware of a potential presence issue, will fall on the side of having the defendant present.  However, since a competency hearing was never required pursuant to § 46-14-221(1), MCA, and the District Court did not conduct a competency hearing, it is not necessary to address White's presence claim for an uncontested finding made by the District Court—even if made at a status hearing.  Significantly, White has not challenged the procedures of § 46-14-221(1), MCA.

16

hearing in which the District Court reached its conclusion that White regained his fitness and that proceedings in the criminal case could resume.

¶41     I therefore disagree with the Court that a competency hearing was ever conducted which would potentially invoke the defendant's right to be present and the Court's harmless error analysis. *See* Opinion, ¶¶ 20-21. It is not necessary to address whether the District Court's fitness determination was a critical stage of the proceeding, because there was no contested fitness hearing conducted in White's absence. The District Court complied with statutory requirements in its adoption of uncontested findings. Because White has not challenged the constitutionality of the statute or its procedure on appeal or argued that a competency hearing must be held before an uncontested fitness determination can be made, I believe the Court's analysis is incorrect. I therefore specially concur as to Issue One.

¶42     The Court's analysis and resolution of Issue Two is troubling. To understand why this is so, it is only necessary to review the *record* and note the complete absence of an initial appearance hearing. White's scheduled initial appearance on February 28, 2011 substantively did not occur: White was undisputedly not fit to proceed; defense counsel represented to the court his client could not understand the court's advisements; defense counsel requested a continuance, presumably until White regained his fitness to proceed; and the court accepted White's motion and committed White to Montana State Hospital.

17

White's motion raising his fitness to proceed and the court's commitment of White suspended the criminal proceedings pursuant to § 46-14-221(2)(a), MCA.[2]

¶43 After White was determined to have regained his fitness on October 24, 2011, the District Court set the matter for a bench trial without conducting an initial appearance.[3] I disagree with the Court that we may presume that because White was represented by counsel, he effectively "realized" these mandatory advisements to which he was both statutorily and constitutionally entitled. It is almost too basic and too simple to state that we should not compel a defendant to defend himself against criminal accusations brought by the State without first properly advising the defendant of his constitutional rights in the proceedings. These advisements are so well-established and routine that their constitutional principles are embodied in § 46-7-102, MCA, as a "[d]uty of court."

¶44 White was charged on February 17, 2011, by complaint in Gallatin County Justice Court with one count of assault with a weapon in violation of § 45-5-213, MCA.[4] The underlying offense occurred on February 16, 2011. White had a long and documented history of mental illness. The State filed a motion and affidavit for leave to file an

---

[2] Section 46-14-221(2)(a), MCA, provides:

> If the court determines that the defendant lacks fitness to proceed, the proceeding against the defendant must be suspended, except as provided in subsection (4), and the court shall commit the defendant to the custody of the director of the department of public health and human services to be placed in an appropriate mental health facility, as defined in 53-21-102, or residential facility, as defined in 53-20-102, of the department of health and human services for so long as the unfitness endures or until disposition of the defendant is made pursuant to this section, whichever occurs first.

[3] White filed a written waiver of jury trial on April 19, 2013.
[4] White never appeared in Justice Court for an initial appearance.

18

information in the District Court and a petition to involuntarily commit White. White had both an emergency detention hearing pursuant to the State's civil commitment petition and his initial appearance on the information February 28, 2011, before the same judge.

¶45 During White's initial appearance, which apparently followed White's emergency detention hearing, the District Judge inquired of defense counsel whether White was fit to proceed with his initial appearance. Defense counsel answered on two occasions that White was not fit to proceed with the initial appearance and requested that the proceedings be suspended pursuant to § 46-14-221(2)(a), MCA. Defense counsel represented that he would be filing a written motion raising White's fitness to proceed and that the Court could enter a "not guilty" plea on White's behalf. The court committed White to Montana State Hospital for evaluation, entered a plea on White's behalf, and set bail and conditions of release. It is undisputed that the provisions of §§ 46-7-101 and -102, MCA, relating to a defendant's initial appearance were never satisfied.

¶46 The Court states the "purpose of the initial appearance is to ensure that a defendant is not 'held incommunicado for a protracted time,'" citing *State v. Gatlin*, 2009 MT 348, ¶ 22, 353 Mont. 163, 219 P.3d 874, and observes that "White was not held incommunicado, rather he had an attorney throughout the case, even during times when other criminal defendants are typically not represented." Opinion, ¶¶ 34-35. While I agree that ensuring a defendant is not held "incommunicado" is one purpose of the

19

"without unnecessary delay" provision of § 46-7-101, MCA, it is my opinion we have misinterpreted our precedent in *Gatlin* and *State v. Strong*, 2010 MT 163, 357 Mont. 114, 236 P.3d 580, where initial appearance hearings were nevertheless held, in order to justify a particular result in this proceeding.[5]  This Court has consistently recognized that "'[t]he purpose of [§ 46-7-101, MCA] is to [e]nsure that the person arrested is advised of the charge made against him in order to enable him to prepare a defense, *and* to protect him from being held incommunicado for protracted periods of time.'"  *State v. Benbo*, 174 Mont. 252, 260, 570 P.2d 894, 899 (1977) (quoting *State v. Nelson*, 139 Mont. 180, 188, 362 P. 2d 224, 229 (1961)) (emphasis added).

¶47    Almost every element of an initial appearance under state statutes or the Federal Rules of Criminal Procedure serve to enforce or give meaning to important individual rights that are either expressly granted in the U.S. Constitution, the Montana Constitution, or case precedent.  Article II, Section 24 of the Montana Constitution provides:

> In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury . . . .

The initial appearance serves to (1) advise the defendant of his Sixth Amendment right to be informed of the charges against him, U.S. Const. amend. VI ("the accused shall enjoy

---

[5]  The Court in *Strong* recognized a close association, but nevertheless a distinction, between § 46-7-101(1), MCA, requiring a prompt initial appearance, and § 46-7-102, MCA, requiring that "a defendant be informed  . . . of the important rights set out in § 46-7-102, MCA." *Strong*, ¶ 11. The Court observed that "[t]hese two sections together ensure that a criminal prosecution begins promptly and with *a recognition of the defendant's essential rights*." *Strong*, ¶ 11 (emphasis added).

the right . . . to be informed of the nature and cause of the accusation"); (2) inform the defendant of his right to counsel and that if he is indigent counsel will be appointed, U.S. Const. amend. VI ("the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence"); *Coleman v. Alabama*, 399 U.S. 1, 7, 90 S. Ct. 1999, 2002 (1970); *Miranda v. Arizona*, 384 U.S. 436, 471-73, 86 S. Ct. 1602, 1626-27 (1966); *Gideon v. Wainwright*, 372 U.S. 335, 339-40, 83 S. Ct. 792, 794 (1963); *Johnson v. Zerbst*, 304 U.S. 458, 459, 58 S. Ct. 1019, 1021 (1938); (3) inform the suspect of the right to remain silent under the Fifth Amendment privilege against self-incrimination, U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself"); *Miranda*, 384 U.S. at 442, 86 S. Ct. at 1611; and (4) to have bail reviewed and set in accordance with the Eighth Amendment, U.S. Const. amend. VIII ("Excessive bail shall not be required"); *Stack v. Boyle*, 342 U.S. 1, 5, 72 S. Ct. 1, 3 (1951).

¶48     Section 46-7-102, MCA, embodies the aforementioned constitutional principles and specifically states that it is the "[d]uty of [the] court" and that the judge "shall" inform the defendant:[6]

>    (a) of the charge or charges against the defendant;
>    (b) of the defendant's right to counsel;
>    (c) of the defendant's right to have counsel assigned by a court of record in accordance with the provisions of 46-8-101;
>    (d) of the general circumstances under which the defendant may obtain pretrial release;

---

[6] The specific provisions of § 46-7-102, MCA, serve to "duly inform[ ] [the defendant] of his constitutional rights (the right to know the charge against him, the right to counsel, the right to remain silent and the right to bail) . . . ." *Commission Comments* § 46-7-102, MCA.

(e) of the defendant's right to refuse to make a statement and the fact that any statement made by the defendant may be offered in evidence at the defendant's trial;

(f) that conviction may result in the loss of various rights regarding firearms under state and federal law; and

(g) of the defendant's right to a judicial determination of whether probable cause exists if the charge is made by a complaint alleging the commission of a felony.

It is necessary the defendant be informed of these rights by the court. The fact that White was appointed counsel does not release the court from its obligation to provide the defendant with a proper advisement of these rights.

¶49 While recognizing that an error occurred in failing to comply with the provisions of § 46-7-102, MCA, the Court finds it "notable" that White failed to make any objection and additionally has never alleged a violation of any one of these rights. We conclude that "White received the actual realization of those rights," Opinion, ¶ 32, and therefore "decline to exercise plain error review," Opinion, ¶ 36. In some respects, we put the cart before the horse by reviewing a claim for prejudice, finding no prejudice, and then declining to exercise plain error review. However, because I have little doubt the District Court would have promptly and sufficiently conducted an initial hearing following White's release from Montana State Hospital had defense counsel objected, I am compelled to find that the objection should have been made in order that error be preserved. I disagree, however, that the exercise of plain error review is not required. It is my opinion that the ultimate effect of the failure to advise of these fundamental constitutional rights must be deemed a denial of due process which "leave[s] unsettled the question of the fundamental fairness of the trial or proceedings, [and] compromise[s]

22

the integrity of the judicial process." *State v. Reim*, 2014 MT 108, ¶ 38, 374 Mont. 487, 323 P.3d 880.

¶50 Initially, I want to be clear that while I believe an objection should have been made to the failure to conduct an initial hearing, I think it unfair to require a person to object to what occurred during a period when he was deemed unfit to proceed. If it is fundamentally unfair to require an incompetent person to stand trial, *Pate v. Robinson*, 383 U.S. 375, 378, 86 S. Ct. 836, 838 (1966), then certainly it is just as unfair to require the person to make an objection during a period when he is considered unfit to proceed. We cannot presume that White knew, one way or another, whether he was advised of his rights, particularly since he was deemed unfit to proceed for the first eight months of his pre-trial proceedings. This is, however, a matter more appropriately addressed in a collateral proceeding and is not a basis for altering standards of review and precedent regarding preservation of error.

¶51 Secondly, I fundamentally disagree with the notion that the absence of a specific violation of one or more of the fundamental rights provided for in § 46-7-102, MCA, dispenses of any consideration of a violation of the statute. The requirements of § 46-7-102, MCA, would be rendered meaningless under such an interpretation. In stating the obligation of the judiciary to apply these constitutional rights, the United States Supreme Court, over 100 years ago, eloquently explained in *Weems v. United States*, 217 U.S. 349, 373, 30 S. Ct. 544, 551 (1910):

> [O]ur contemplation cannot be only of what has been but of what may be. Under any other rule a constitution would indeed be as easy of application

as it would be deficient in efficacy and power. Its general principles would have little value and be converted by precedent into impotent and lifeless formulas. Rights declared in words might be lost in reality. And this has been recognized. The meaning and vitality of the Constitution have developed against narrow and restrictive construction.

¶52 We applied these principles recently in *Strong*, where we declared that the *Benbo* suppression remedy was an insufficient incentive for officials to follow these statutory procedures and that, without more, rights declared in statute will often become "'lost in reality.'" *Strong*, ¶ 14. We held that if dismissal were the appropriate remedy in *Gatlin* for a failure to provide the defendant with all the information and advisories required at the initial appearance, then "manifestly dismissal is the appropriate remedy if the initial appearance itself is unnecessarily delayed." *Strong*, ¶ 15. Consistent with *Gatlin* and *Strong*, I would therefore dismiss the charge for failure to conduct an initial appearance hearing—or any hearing—in which White was advised of his constitutional rights as provided for in § 46-7-102, MCA. It is my view that we ignore the law established by prior cases in holding otherwise.

¶53 The final issue remaining is whether the dismissal should be with or without prejudice. In *Strong*, we held:

> We re-affirm what was at least implied in *Gatlin*: if a defendant who is not afforded the rights provided by §§ 46-7-101 and -102, MCA, demonstrates material prejudice arising from an unnecessary delay in providing an initial appearance or from failure to provide required information and advisories, then dismissal with prejudice may be warranted.

*Strong*, ¶ 20. As I have indicated, the Court's analysis dispenses with the requirement of advising a criminal defendant of the constitutional rights at an initial appearance by finding that a defendant receives the "actual realization of those rights" vicariously

24

through counsel.  Opinion, ¶ 32.  Dismissal with prejudice would serve to protect the defendant's statutory rights and his constitutional rights.  In the present case, however, White seeks only dismissal without prejudice.  I therefore would dismiss the case without prejudice.

¶54    In closing, I feel constrained to comment that I understand the circumstances surrounding the District Court's failure to conduct an initial hearing.  The register of action and minute entries of the Clerk of Court reflect that an initial hearing took place.  The District Judge undoubtedly noted these docket entries and proceeded to set an omnibus hearing following White's release from Montana State Hospital.  Everyone concerned—eight months and hundreds of cases later—understandably did not recall the particular circumstances of the February 28, 2011 hearing.  There would not have been a transcript of the proceeding in the court file.  In spite of these administrative obstacles, however, a criminal defendant must receive the advisories contained in § 46-7-102, MCA, and the failure to provide these advisories was error.  Under the circumstances of this case, I would exercise plain error review and dismiss without prejudice.  I dissent from the Court's resolution of Issue Two concluding otherwise.

/S/ LAURIE McKINNON