Justice Jim Rice delivered the Opinion of the Court.
***406 ¶1 Brian Thomas Norvell (Norvell) appeals his conviction of aggravated assault, in violation of § 45-5-202, MCA, upon his no contest *636 plea, in the Nineteenth Judicial District Court, Lincoln County. We reverse and remand for dismissal without prejudice.
¶2 We consider the following issue:
Did the District Court err by denying Norvell's motion to dismiss for unnecessary delay between his arrest and initial appearance?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 As alleged, on May 9, 2016, Norvell struck a cyclist with his car while driving on a highway near Libby, Montana. Norvell initially fled, but soon returned to the collision scene in a different car while law enforcement was investigating. Norvell approached United States Border Patrol Agent Luis Granado (Granado), who was the first law enforcement officer to arrive on the scene, said "I am the one that nailed him," and asked Granado to "give his best regards to the cyclist's family." Norvell handed Granado a wallet, which was later identified as the victim's. Granado observed that Norvell was "pretty worked up" and "breathing heavy." Norvell indicated he was going to leave the scene, so Granado had Norvell wait in a law enforcement vehicle until additional law enforcement arrived.
¶4 Montana Highway Patrol Trooper Anthony Jenson (Jenson) responded to the scene and took over the investigation. Jenson made contact with Norvell, who refused to answer questions. Jenson observed that Norvell's eyes were red, bloodshot, and watery. Because Norvell was detained in a law enforcement vehicle, Jenson advised Norvell of his Miranda rights. Jenson then continued investigating, including speaking to a witness and documenting the scene.
¶5 Jenson learned that Norvell was on probation for a prior felony offense in Idaho. Jenson contacted Norvell's probation officer, Darrell Vanderhoef (Vanderhoef), who advised Jenson that Norvell had violated his probation by operating a motor vehicle with a suspended license and fleeing the scene of a crash involving injury. Vanderhoef verbally authorized Jenson to arrest Norvell, so Jenson took Norvell into custody for violation of probation and transported him to the Lincoln County Detention Center (Detention Center).
¶6 The next day, May 10, Vanderhoef filed an authorization to pick up and hold Norvell with the Detention Center, and met with Norvell there. Norvell told Vanderhoef that he had driven his vehicle someplace into the woods between the crash scene and the Koocanusa Bridge. Law enforcement located Norvell's vehicle near that location ***407 several hours later, although the record does not establish whether this finding occurred as a result of Norvell's statement to Vanderhoef.
¶7 On May 12, 2016, Vanderhoef provided the Detention Center with an arrest warrant, which stated that Norvell should be held for an "Investigative hold: New felony charges to be filed in Lincoln County." The warrant erroneously stated that Norvell was on parole and that because he was an "interstate offender" he was not entitled to bond.
¶8 Jenson continued the collision investigation over approximately twelve more days, then submitted a report to the Lincoln County Attorney's Office. Jenson located the vehicle Norvell was driving; interviewed witnesses and the victim's family; retrieved four dollars in cash the victim was carrying in his wallet at the time he was struck; gathered physical evidence such as the bicycle and the victim's clothing; and interviewed the victim, who stated that Norvell drove up to him shortly before the collision and asked what time it was, then turned his vehicle around and drove by very slowly while staring at him.
¶9 During this investigatory period, Norvell remained in custody for the alleged probation violation and did not make an initial appearance, even though Lincoln County judges held court during this time. On May 19, a public defender discovered Norvell in the Detention Center and, given the apparent lack of a pending charge, filed a petition for a writ of habeas corpus on his behalf on May 24. On May 25, the State filed a complaint in Lincoln County Justice Court charging Norvell with felony aggravated assault, and Norvell made an initial appearance on the charge the next day, May 26. Seventeen days passed between the time of Norvell's initial arrest for violating probation and his *637 initial appearance for aggravated assault. He was not provided counsel during this time.
¶10 Norvell was diagnosed with schizophrenia at a young age, but apparently had not been taking his medication at the time he struck the cyclist, and his condition was in decline. Although the Detention Center staff was aware of Norvell's condition, Norvell was not provided some of his medications, in part because staff believed he was not actually taking them, and his condition continued to decline. Norvell was placed in solitary confinement for being disruptive. On June 8, Norvell's attorney filed a motion requesting Norvell be taken to the state hospital because he could not assist in his own defense. The District Court granted the motion, ordering Norvell's transfer on June 8, but the state hospital did not have capacity to receive Norvell until July 11. In the meantime, on July 1, Norvell was charged with assaulting a peace officer in the Detention Center. When Norvell was ***408 transferred to the state hospital on July 11, the doctor conducting the intake evaluation described Norvell as being in "an acutely psychotic state." After receiving treatment, Norvell was discharged from the state hospital and returned to the Detention Center in September 2016. On September 26, Norvell was arraigned, wherein the District Court found, without objection, he was fit to proceed.
¶11 On November 21, Norvell filed a motion to dismiss, arguing his initial appearance was unnecessarily delayed in violation of both § 46-7-101, MCA, and his constitutional right to due process. Norvell sought dismissal of his charges with prejudice and suppression of all evidence gathered during the period of the delay. The District Court conducted a hearing and, on March 21, 2017, entered an order denying the motion to dismiss. Although attributing the delay to the probation violation, the District Court nonetheless reasoned that "during that delay information related to the current case was obtained and shared with the investigating officer," and thus impacted the aggravated assault case. It reasoned that the proper remedy was suppression of evidence obtained against Norvell "as a result of the delay attributable to the alleged probation violations," which it determined to be only Norvell's May 10 statement to Vanderhoef about the vehicle.
¶12 On May 27, 2017, Norvell pled no contest to the charge of aggravated assault, reserving the right to appeal the denial of his motion to dismiss for delay in his initial appearance. Norvell appeals.
STANDARD OF REVIEW
¶13 "The grant or denial of a motion to dismiss in a criminal case is a question of law, which we review de novo." State v. Gatlin , 2009 MT 348, ¶ 15, 353 Mont. 163, 219 P.3d 874. "We review a district court's grant or denial of a motion to suppress to determine whether the court's findings are clearly erroneous and whether those findings were applied correctly as a matter of law." State v. Gill , 2012 MT 36, ¶ 10, 364 Mont. 182, 272 P.3d 60. "Whether an initial appearance is sufficient to satisfy the requirements of § 46-7-101(1), MCA, which requires a person who is arrested to be taken without unnecessary delay before the nearest and most accessible judge, is a question of statutory construction, which we review for correctness." Gatlin , ¶ 16. Finally, "[w]e exercise plenary review of constitutional questions." State v. Covington , 2012 MT 31, ¶ 13, 364 Mont. 118, 272 P.3d 43.
DISCUSSION
¶14 Did the District Court err by denying Norvell's motion to dismiss ***409 for unnecessary delay between his arrest and initial appearance?
¶15 Norvell argues that his constitutional rights were violated when he suffered an unnecessary 17-day delay between his arrest on May 9, 2016, and his initial appearance on May 26, 2016, which justifies dismissal of the aggravated assault charge with prejudice.[1] In response, the State denies *638 an unnecessary delay occurred because Norvell was charged for aggravated assault on May 25, 2016, and his initial appearance occurred the next day, and thus, any delay is not attributable to this proceeding.
¶16 A person who has been arrested "must be taken without unnecessary delay before the nearest and most accessible judge for an initial appearance." Section 46-7-101(1), MCA ; accord Gatlin , ¶ 19 ; State v. Strong , 2010 MT 163, ¶ 9, 357 Mont. 114, 236 P.3d 580. Section 46-1-202(3), MCA, defines "arrest" as the "taking [of] a person into custody in the manner authorized by law." The "unnecessary delay" standard applies to the period between a defendant's arrest and his initial appearance, regardless of when the State files the complaint. See Hope v. State , 2003 MT 191, ¶ 15, 316 Mont. 497, 74 P.3d 1039 ; see also Strong , ¶ 10 (calculating unnecessary delay under § 46-7-101(1), MCA, from the date of arrest to the date of the initial appearance).
¶17 We have recognized the importance of § 46-7-101, MCA, explaining "the requirement for a prompt initial appearance protects the defendant from being jailed and held incommunicado for indefinite ***410 and possibly protracted periods of time. Closely associated with the requirement of a prompt initial appearance is the requirement that a defendant be informed without unnecessary delay of the important rights set out in § 46-7-102, MCA. These two sections together ensure that a criminal prosecution begins promptly and with a recognition of the defendant's essential rights." Strong , ¶ 11 (citations omitted); see also Gatlin , ¶¶ 22-23 ; State v. Dieziger , 200 Mont. 267, 270, 650 P.2d 800, 802 (1982).
¶18 Here, the record shows Norvell was arrested on May 9, 2016, for violations of his probation and, as such, was subject to a 72-hour probationary hold. Section 46-23-1012(3), MCA. Within that 72-hour period, a probation officer must either conduct an intervention hearing, arrange for the probationer to appear before a magistrate to set bail, or authorize the detention center to release the probationer. Section 46-23-1012(3), MCA. None of these occurred, and a revocation petition or other proceeding based upon the probation violation was not initiated. Thus, the basis for Norvell's detention for violation of probation expired at the end of the 72-hour hold period, on May 12, and he was subject to release.
¶19 However, on May 12, Vanderhoef provided an arrest warrant to the Detention Center for the purpose, as stated in the warrant, of holding Norvell for "[n]ew felony charges to be filed in Lincoln County." With the expiration of the probationary hold and the absence of any probationary proceeding, this was, valid or not, effectively an arrest related to, not probation violations, but to the expected new criminal charge, despite delivery of the warrant by a probation officer. Thus, local law enforcement and prosecutors became responsible for Norvell's detention, and the "unreasonable delay" clock started to run in anticipation of action to either commence a proceeding upon probable cause for which Norvell would be brought before a magistrate, or to release him. Instead, another 14 days elapsed between this arrest and Norvell's appearance on May 26 on the aggravated assault charge. While the charge *639 was filed only one day before, Norvell's detention since May 12 was for the purpose of that prospective charge and counted toward, and constituted, "unnecessary delay" in appearance under § 46-7-101, MCA.
¶20 The State argues that, if the Court concludes the delay was attributable to the aggravated assault proceeding, the District Court's analysis finding little prejudice, and suppressing only Norvell's May 10 statement, should be affirmed. Norvell argues he suffered prejudice from the delay that requires dismissal of the charge with prejudice, noting the State obtained a confession from him, gathered other ***411 evidence, deprived him of access to counsel, and placed him in solitary confinement that contributed to his decline into an acutely psychotic state.
¶21 Formerly, our precedent favored, as a remedy for violation of § 46-7-101(1), MCA, the suppression of all evidence obtained during any "unnecessary delay." See State v. Benbo , 174 Mont. 252, 261-62, 570 P.2d 894, 899-900 (1977) ; State v. Rodriguez , 192 Mont. 411, 418, 628 P.2d 280, 284 (1981) ; Dieziger , 200 Mont. at 270, 650 P.2d at 802 ; State v. Beach , 217 Mont. 132, 149-50, 705 P.2d 94, 105-06 (1985) ; Hope , ¶ 14. However, we have since determined that dismissal of the case is the more appropriate remedy for a violation of § 46-7-101(1), MCA. Gatlin , ¶¶ 22-23 ; Strong , ¶ 14 (because "unnecessarily delaying a defendant's initial appearance before a judge 'shocks' the concepts of fundamental fairness and due process ... suppression remedy is insufficient").
¶22 Gatlin concerned the related issue of a failure to inform the defendant of his right to counsel at his initial appearance, in violation of §§ 46-7-102(1)(b) and 46-8-101, MCA. Gatlin , ¶ 18. While we found that "[n]eglecting to inform an incarcerated defendant of his right to counsel ... taints the fundamental fairness of all subsequent proceedings[,]" Gatlin , ¶ 23, and thus dismissed the information filed against the defendant, we declined to dismiss with prejudice. Gatlin , ¶ 31. We reasoned that, if the record showed the defendant "was not prejudiced by the inadequacy of his initial appearance or by an unreasonable delay, we should decline to dismiss the charges with prejudice." Gatlin , ¶ 26. We noted the County Attorney took no steps to advance the case against Gatlin while he was without counsel, no critical confrontations between Gatlin and the prosecution had taken place, no new evidence was gathered against him, that the presence of counsel would have provided no additional protection, and the State did not profit from the violation. Gatlin , ¶ 27.
¶23 Here, as the District Court concluded, the only piece of challenged evidence that could relate to the unnecessary delay was the statement Norvell made while in detention to Vanderhoef about the whereabouts of Norvell's vehicle. The record does not conclusively establish that this statement led to the discovery of the vehicle or whether the vehicle would inevitably have been otherwise located. While the investigation continued while Norvell was detained, there is no demonstration that counsel appointed at a timely initial appearance could have "provided additional protection from the prosecution" of the charge, or that "the State profited" by the error. Gatlin , ¶ 27. Norvell argues that appointed ***412 counsel could have sought medical treatment and transfer to the state hospital, but, as the District Court found, Norvell had discontinued his medication prior to his detention and was already decompensating. This was resolved after treatment in the state hospital, leaving him with "minimal residual symptoms" and fit to proceed to trial. We conclude that Norvell did not experience prejudice from the delay that would require dismissal of the charge with prejudice. See Gatlin , ¶ 26.
¶24 The judgment and sentence entered herein is reversed and this case is remanded to the District Court with instructions to dismiss the charge of aggravated assault without prejudice.
We concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
LAURIE McKINNON, J.
JAMES JEREMIAH SHEA, J.

Norvell argues that the pre-appearance delay here implicates fundamental constitutional due process protections on which § 46-7-101, MCA, is based. Indeed, "[a]lmost every element of a 'first appearance' under state statutes or the Federal Rules of Criminal Procedure serves to enforce or give meaning to important individual rights that are either expressly granted in the Constitution or are set forth in Supreme Court precedent." Coleman v. Frantz , 754 F.2d 719, 724 (7th Cir. 1985) (holding a defendant's "eighteen-day detention without an appearance before a judge or magistrate was a deprivation of liberty without due process of law."); see also Holloway v. Del. Cnty. Sheriff , 700 F.3d 1063, 1069-70 (7th Cir. 2012). Pre-appearance delays can also implicate the Fourth Amendment: "the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common-law antecedents.... [T]he Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." Gerstein v. Pugh , 420 U.S. 103, 111, 114, 95 S. Ct. 854, 861, 863, 43 L.Ed.2d 54 (1975) ; see also County of Riverside v. McLaughlin , 500 U.S. 44, 57-58, 111 S. Ct. 1661, 1670-71, 114 L.Ed.2d 49 (1991) ; Powell v. Nevada , 511 U.S. 79, 80, 114 S. Ct. 1280, 1281, 128 L.Ed.2d 1 (1994) ; Manuel v. City of Joliet , --- U.S. ----, 137 S. Ct. 911, 917-18, 197 L.Ed.2d 312 (2017). The same would be true under the Montana Constitution's protections of due process of law and against unreasonable searches and seizures. Mont. Const. art. II, §§ 11, 17. However, we need not reach these constitutional issues given that relief can be granted under § 46-7-101, MCA.